## LOUIS H. BRECKER v. CHARLES FILLINGHAM et al., Appellants.

**Division One, February 26, 1908.**

1. **EJECTMENT: Accretions: Issues of Fact.** Where there was substantial evidence that the whole of plaintiff's patent lands were not washed away by the action of the river, and that the lands in question were accretions to those not washed away, the appellate court will not undertake to determine whether or not they were all washed away before the "made" land began to form. Nor will it say on which side was the preponderance of the evidence. It is for the trier of the facts (in this case, the court sitting as a jury) to determine the weight to be given to the testimony.

2. **EVIDENCE: Map: Certificate.** A map of surveys kept in a United States office, to which is appended a certificate that "this map, as far as it goes into detail, is a correct copy of an original map on file in this office," is not competent evidence. On its face it does not purport to be a true and complete copy.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

AFFIRMED.

*R. H. Stevens* and *Bryan & Christie* for appellants.

(1) All records and exemplifications of office books kept in any public office of the United States, or of a sister State, not appertaining to a court, shall be evidence in this State, if attested by the keeper of said records or books and the seal of his office, if there

be a seal. R. S. 1899, sec. 3098. (2) Where there is no substantial evidence to support the finding and judgment of the trial court, the appellant court will reverse the judgment.

*W. F. Broadhurst* and *C. W. Wilson* for respondent.

(1) While the evidence submitted at the trial by plaintiff and defendant respectively, was conflicting, the evidence produced by plaintiff tending strongly to support his contention, while the evidence offered by defendant tended to support his contentions, the findings of the court are supported by evidence produced, and this court will not undertake to say on which side the weight of evidence lay. Culberson v. Hill, 87 Mo. 553; Everman v. Eggers, 106 Mo. App. 732; Dobbins v. Humphreys, 171 Mo. 202; James v. Life Assn., 148 Mo. 16; Davis v. Railroad, 46 App. 185; Weller v. Wagner, 181 Mo. 151; Golden v. Tyler, 180 Mo. 204; Bray v. Kemp, 113 Mo. 552; Blanton v. Dold, 109 Mo. 69; State v. Richardson, 117 Mo. 590. (2) The trial court had before it the witnesses who testified; had the opportunity of observing their demeanor on the stand and their manner in testifying. It was in much better position to judge as to the weight to be attached to the testimony of the respective witnesses than this court can possibly be. Even in an equity proceeding, where the right of this court to review the evidence is unquestioned, the uniform practice of this court is to defer to the findings of the trial court on issues of fact, and to refuse to reverse a judgment of the lower court on the ground that the findings were against the weight of evidence. Johnson v. Realty Co., 177 Mo. 597; Kittridge v. Bldg. Assn., 103 Mo. App. 361. (3) The court committed no error in excluding from evidence copies of maps of the Missouri River Commission.

WOODSON, J.—This action was brought in the circuit court of St. Louis county. The petition consists of two counts, one in ejectment, and one under the provisions of section 650, Revised Statutes 1899, to determine and quiet title to certain lands on what is known as "St. Charles Island" in the Missouri River.

The facts disclosed by the evidence may be briefly stated as follows: The island as originally surveyed by the Government contained about 385.01 acres, and consisted of parts of sections 5, 7, 8, 17 and 18 in township 56 of range 5 east. By patent, dated January 14, 1836, the Government granted this property to one George Collier. Collier and wife conveyed to Atkinson in 1847. In 1859 Atkinson conveyed to Thomas W. Cunningham, as assignee, for benefit of his creditors. In 1859 Cunningham, for the purposes of sale, had the island subdivided into lots by one Theodore Bruere, county surveyor of St. Charles county, Missouri. By these conveyances the plaintiffs, Brecker and Cottle, acquired title to lots 1, 2, 3, 4 and 7 of Bruere's subdivision of the island.

At the point where this island is located the Missouri river runs north and south, the foot of the island being north and the head south. At the time the island was surveyed by the United States surveyors the main channel of the Missouri ran on the eastern side of the island, separating it from the St. Louis county shore, and the island being separated from the western or St. Charles county shore by a narrow slough. At some time after the survey of the island by the Government surveyors, the river began encroaching upon the St. Louis county shore to the east of the island, and at the same time adding by accretion to the eastern and northern parts of the island, until, in 1859, it contained by actual survey 1,000 acres instead of 385 acres, as when originally surveyed by the Government. Lots 1, 2, 3, 4 and 7 of Bruere's subdivision of the island in 1859

were situated on the extreme southern end of the island, lot 1 being the southern lot lying next to the river, lot 2 adjoining it on the north, lot 3 adjoining lot 2 on the north, lot 4 adjoining lot 3 on the north, and lot 7 lying north of lot 4. The defendants or their predecessors in title owned lands in St. Louis county and bounded by the Missouri river. At the time of Bruere's survey of the island, in 1859, the main channel of the river continued to flow between the island and the St. Louis county main shore, the main channel of the river at that time flowing between said lots 1, 2, 3, 4 and 7 on the island and the main shore lands in St. Louis county, now owned by the defendants.

The main channel of the river continued to flow on the eastern or St. Louis county side of the island, thus separating the St. Louis county shore and the island, until the year 1883. In the spring or summer of 1883, during a season of very high water, the main channel of the river shifted from the eastern to the western side of the island, and at all times since the high water of 1883 the main channel of the river has continued to flow on the western side of the island. That is to say, from 1883 down to the present time the river has run between the island and the St. Charles county shore.

There is no dispute about the fact that a portion of the old original island is still standing—some bearing trees and corners and monuments noted by Bruere in his survey in 1859 being still in existence on the ground. While there is a sharp conflict in the testimony as to the exact location of the river from 1875 up to 1883, the witnesses all agree that up to the date of the change in the channel in 1883 the river flowed on the east side of the island, and that after the channel of the river shifted to the west side of the island, what had been the channel of the river prior to the shift was left with sloughs running through it, and within a

few years after the channel shifted to the western side of the island, the upper or southern ends of these sloughs closed up and the river ceased to flow through them, so that the entire river ran and has continued to flow on the western side of the island. At the date of the trial and for a number of years prior thereto the whole river was running west of the island. The entire river is now and has been for years past between the island and the St. Charles county shore.

Up to this point there is practically no dispute between the parties as to the facts of the case; but here is the initial point of the parting of their ways.

The appellants introduced testimony tending to prove that about 1871, or 1872, the river began cutting off the upper or south end of the island, and continued to do so up to 1883, at which time all of lots 1, 2, 3, 4 and 7, owned by respondent, were completely washed away and the main channel of the river occupied the original site of respondent's lands; that as the river washed the south end of the island off it added by accretion to their lands on the St. Louis county shore, and that when the river finally shifted to the west side of the island, in 1883, the entire land in controversy was added by accretion to their main shore land in St. Louis county.

The respondent, however, introduced testimony, on the other hand, which tended to prove that said lots were never entirely washed away, and that after the shift of the channel in 1883 the portion of the lots that had been washed away were restored by accretion.

The appellants offered in evidence certain surveys or maps of said premises, which were, by the court, excluded, and proper exceptions were saved.

There was a trial before the court without the intervention of a jury, and the findings of fact were for the plaintiff, and judgment was entered accordingly.

After taking the proper preliminary steps, the defendants appealed the cause to this court.

I.   There is no complaint at the action of the court in giving or refusing instructions.   Appellants concede that the action of the court in that regard was unobjectionable; but they do complain that there is no evidence in the record which tends to support respondent's theory of the case—that is, that all of lots 1, 2, 3, 4 and 7 were never all entirely washed away, and that after the change of the channel of the river, in 1883, from the west to the east side of the island, the portions thereof. which had been washed away were restored by accretion.   For that reason, they contend that the judgment should be reversed, and the cause remanded for a new trial.

We are unable to lend our concurrence to that contention.   There were many witnesses, thirty-odd in number, who testified in the case, and the issues were sharply contested on each side, and there was much evidence introduced by both parties tending strongly to prove their respective theories of the case.

It is not for this court to pass upon the weight of the evidence; that is within the province of the triers of the fact.   Where the evidence introduced is conflicting, the jury or the trial court are the sole judges of the credibility of the witnesses and the weight to be given to their testimony; and this court will not usurp their prerogative by saying which side has the preponderance of the evidence.   Their finding is conclusive upon this court. [Culbertson v. Hill, 87 Mo. 553; Dobbins v. Humphreys, 171 Mo. 198-202; Weller v. Wagner, 181 Mo. 151.]

This court has repeatedly held, that where the trier of the facts has the witnesses before him, the opportunity of observing their demeanor on the witness stand and their manner in testifying, it places him in a

much better position to judge of the weight to be given to the testimony of the respective witnesses than this court could possibly have.

And that, even in equity cases, where this court has the right to review and weigh the evidence, the usual practice is to defer largely to the finding of the trial court on issues of fact, and refuse to disturb a judgment of the lower court on the grounds that the findings were against the weight of the evidence. [Johnson v. Realty Co., 177 Mo. 595, 597; Kittredge v. Bldg. Assn., 103 Mo. App. 361.]

II. Appellants next insist that the action of the court in excluding three maps offered in evidence by them was error.

The record shows that two of them offered were maps of surveys made under the authority of the United States, showing the general trend of the current of the Missouri river, its channel, the location of St. Charles Island, and the general topography of the situation in the vicinity of the lands in suit. The survey mentioned in the first map was made between May 11th and 16th, 1879, while the latter bears no date; and both bear the following certificate, except the second is dated January 15th, 1904:

"I, H. M. Chittenden, Captain, Corps of Engineers U. S. Army, hereby certify that I am by law the keeper of the records in which the foregoing surveys are recorded, and that this map, as far as it goes into detail, is a correct copy of an original map on file in this office, made under the direction of the Missouri River Commission.          H. M. CHITTENDEN,

"Captain, Corps of Engineers U. S. Army.

"Sioux City, Iowa.    November 28, 1903."

Section 3098, Revised Statutes 1899, provides that all records and exemplifications of office books kept in any public office of the United States, or of a sister

State not appertaining to a court, shall be evidence in this State if attested by the keeper of said records or books and the seal of his office, if there be a seal.

Under this section of the statute the two maps mentioned were admissible in evidence, if properly certified.

The respondent contends, first, that they were not properly certified, and, second, that they shed no light upon the issues joined; and, even if admissible, no harm was done appellants by their exclusion.

As to the first contention, it will be noticed that the certificate states "that this map, *as far as it goes into detail,* is a correct copy of the original," etc. We do not know just what the italicized words as used mean, and there is nothing in the record which shows their meaning; but it is clearly inferable from the use of those words that the map upon which they are endorsed is not a full, true and complete copy of the original which is on file in Captain Chittenden's office. We are unable to determine what parts of the map have been omitted from the copy; nor are we able to say whether or not those omitted portions are material to the issues involved; they may or may not be material. No one but the court can pass upon that question. Captain Chittenden could not do so for several reasons—first, because he was not the judge elected to try the case; second, he was not familiar with the issues involved, and could, therefore, know nothing regarding the relevancy of the omitted parts; and, third, because, as presented, the map might be misleading.

As to the second contention presented by respondent, we will state that we have carefully examined the maps closely, in connection with all the oral evidence introduced, and we are wholly unable to see in what possible way their exclusion could in any manner have injured the appellants. They, in a general way, show

the island, the channel of the river and the trend of the current, and nothing more. All of those things were testified to by all the witnesses, and conceded to be as testified to by all the witnesses.

As to the third map offered, showing the surveys made by Mr. Edgar Rapp, it is sufficient to state that while it shows the location of the lots in suit, the channel and bed of the river at the times stated in the evidence, yet the record fails to show that the appellants offered that map in evidence, or that the court excluded it as such; but it does appear that the map was before the court and that it saw and inspected it; so they received the benefits thereof without its having been formally introduced in evidence.

For the reasons stated, we are of the opinion that there is no reversible error in the record, and that the judgment should be affirmed; and it is so ordered. All concur.