SHELTON et al., Appellants, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, May 12, 1908.

1. COMMON CARRIERS: Limiting Common Law Liability: Consideration: Notice of Damage to Freight. A provision in a contract of affreightment limiting the common law liability of the carrier and providing that the shipper shall give notice of claim for loss or damage within one day from the delivery of the freight at destination is valid and binding upon the shipper if supported by a sufficient consideration.

2. ———: ———: ———: Prima-Facie Case. Where an application for a shipping contract provided that the shipper knew the carrier had two freight rates, one at a higher rate upon which the carrier accepted shipments at its risk, and one, a reduced rate, under which shipments were made with limitations upon the carrier's common law liability, and where the contract of affreightment issued in pursuance of the application recited that it was based upon a reduced rate, giving the rate which was stated to be less than the regular charge for shipments at the carrier's risk, this was sufficient to make out a prima-facie showing of a consideration for a provision in the shipping contract whereby the shipper agreed to give notice of his claim for loss or damage within one day after the arrival of the freight, which consisted of live stock, at its destination.

3. ———: Evidence: Freight Rates: Certificate of Interstate Commerce Commission. In an action against a carrier for damage to freight where the defendant made out a prima-facie case on its defense that the carriage of the freight was undertaken at a reduced rate in consideration of limiting its common law liability, the certificate of the secretary of the Interstate Commerce Commission that the rate for which the freight was shipped was the regular rate, was incompetent to prove that fact, it being shown that the defendant's schedule of rates was on file with the Interstate Commerce Commission so that a copy of the schedule itself duly certified by the commission could have been produced in evidence.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*Charles L. Henson* for appellants.

(1) It is not the defendant's duty to carry the stock through at all hazards in the shortest time possible, but it is held to the duty of exercising ordinary diligence in transporting the stock, without unreasonable delay. R. S. 1899, sec. 1084; Douglass v. Railroad, 53 Mo. App. 473; Leonard v. Railroad, 54 Mo. App. 293; Sloop v. Railroad, 93 Mo. App. 605; Perry v. Railroad, 89 Mo. App. 49; Anderson v. Railroad, 93 Mo. App. 677; Botts v. Railroad, 106 Mo. App. 397. (2) Where the limitation of the carrier's liability purports to rest upon no other consideration than that of a reduced rate, the limitation must stand upon that consideration alone. Ficklin v. Railroad, 115 Mo. App. 633; Fountain v. Railroad, 114 Mo. App. 676; Summers v. Railroad, 114 Mo. App. 452. And being a consideration, may be contradicted or explained. Bowring v. Railroad, 77 Mo. App. 250; Bowring v. Railroad, 90 Mo. App. 324. (3) Where the carrier establishes its rates according to the value of the animal carried, a higher rate for stock of higher value, and a lower rate for those of lower value, such latter rate cannot be called a "reduced rate." Ficklin & Son v. Railroad, 117 Mo. App. 228. It is unlawful for a common carrier engaged in interstate traffic, after it had established and published its schedule of freight rates, to charge a greater or less compensation than that prescribed in such schedule. Secs. 2, 3 and 6, Interstate Commerce Act; Wight v. United States, 167 U. S. 512, 17 Sup. Ct. 822. (4) And the carrier cannot make a contract for a rate lower than such established rate, and enforce it in law; such rates are not the subject of contract. Ward v. Railroad, 158 Mo. 226 and U. S. Statutes there cited; Gerber v. Railroad, 63 Mo. App. 145.

*L. F. Parker* and *Woodruff & Mann* for respondent.

NORTONI, J.—This is a suit for damages alleged to have accrued to plaintiffs because of the negligence of defendant, a common carrier, in transporting a carload of hogs from Mt. Vernon, Missouri, to East St. Louis, Illinois.   The plaintiffs count upon the common law liability of the defendant.   The defendant pleads in bar a provision contained in the contract of affreightment to the effect that unless notice of the loss was given to it within one day after the arrival of the shipment at destination, no suit or action could be maintained thereon.   Plaintiffs conceded executing the contract of shipment containing the stipulation referred to. It is likewise conceded that notice was not communicated to the defendant as required thereby.   It is insisted by the plaintiff, however, that the stipulation in the contract relied upon by the defendant is invalid for the reason it is without consideration.

The evidence introduced on behalf of the plaintiffs tended to prove that the shipment of hogs was made on September 11, and the car started from Mt. Vernon about noon on that day.   In the usual course, it should have arrived at the stock yards at East St. Louis within eighteen hours, or before the opening of the market, at about 8:30 o'clock on September 12, but through the negligence of the defendant, the transportation was impeded and about twenty-seven or twenty-eight hours were consumed in transit, the shipment arriving at the stock yards about 3:35 p. m. on September 12.   The market was closed at 3:00 o'clock on that day.   Upon arrival, eight of the hogs were found to be dead in the car and a considerable loss on the remainder of the load was sustained for the reason the market ranged ten cents per hundredweight lower on the day of the sale than on the day before.   Plaintiffs introduced in evidence the contract of affreightment under which the

shipment was made, whereby the defendant undertook to transport the hogs between the points mentioned, at the rate of twenty-six cents per hundredweight. It is recited therein that this rate of twenty-six cents per hundred pounds is a special rate and less than the rate charged for shipments transported by the defendant at the carrier's risk with full common law liability annexed, and that the stipulation with respect to the notice referred to, is supported by the consideration of such reduced rate of freight. Annexed to this contract is an application signed by the plaintiffs which recites substantially that plaintiffs had knowledge that defendant had two rates of freight for such shipments; that they exercised their option in that behalf and applied for shipment at the reduced rate. In consideration whereof, they were willing to forgive the full measure of defendant's common law liability as a carrier and accept the limitations thereon provided in the contract of affreightment applied for. This provision was accepted by defendant's agent, as appears from his signature, and the contract of shipment entered into and signed by the plaintiffs and defendant, as above indicated.

At the conclusion of all the evidence on the part of plaintiffs, the court directed a verdict for the defendant. Whereupon plaintiffs took a nonsuit with leave to set the same aside. Thereafter, in due time, they moved the court to set the judgment of nonsuit aside. This the court declined to do; wherefore they prosecuted this appeal.

The stipulation in the contract relied upon by defendant is as follows:

"That as a condition precedent to a recovery for any damages for delay, loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or the nearest station agent of the first party, or to

the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination, to the end that such claim shall be fully and fairly investigated; and that a failure to fully comply with the provisions of this clause shall be a bar to the recovery of any and all such claims."

As above stated, it stands conceded the plaintiffs failed to comply with these provisions of the contract and notice was not given until several days after the hogs had been unloaded and commingled with others, and for that matter, after they were sold upon the market. The limitation requiring notice to be given within one day after delivery at destination would no doubt be regarded as quite unreasonable in its application to some cases, as imposing an unjust burden under the circumstances attending the transaction. However, the facts regarding the failure to give notice within that time are not sufficient to suggest its application as unreasonable in the present instance, as nothing whatever looking to that end was done until some days after the hogs were actually unloaded by plaintiffs' agents, commingled with other hogs, and sold upon the market.

The case of Rice v. Railroad, 63 Mo. 314, conclusively determines, so far as this court is concerned, that under proper circumstances, such provisions in contracts of shipment of live stock, when supported by a sufficient consideration, are to be sustained as reasonable and just. See also Baker v. Railroad, 34 Mo. App. 98, 110; 5 Am. and Eng. Ency. Law (2 Ed.), 454, 455. A like provision limiting the time for notice to one day was sustained in Smith v. Railroad, 112 Mo. App. 610, 87 S. W. 9. In Rice v. Railroad, supra,

our Supreme Court, in considering a stipulation in material respects almost identical with the one here involved, except for the one day limitation, said:

"Then the fact is considered that cattle, when shipped, upon reaching their destination, are usually commingled with other cattle, sold for slaughter, or reshipped to other points, it is not unreasonable for the carrier to stipulate with the shipper, that before claim for damages will be allowed, he shall give proper notice, in writing, of his claim, at or before the unloading of the stock, or in such time thereafter as will afford the carrier an opportunity of inspecting the stock before they are commingled with other cattle, slaughtered, sold or reshipped, and thus protect himself from fictitious and unfounded claims. While, upon grounds like these, such special agreements are valid and binding, when they are reasonable, they should be reasonably and justly construed in their application to each case as it arises, in determining the question whether the required notice, both as to form and time, has been substantially complied with, or whether delay has been occasioned in giving the notice, by the acts of defendant, or whether compliance, as regards time or form, has been waived."

See also in this connection the following cases: Freeman v. Railroad, 118 Mo. App. 526, 93 S. W. 302; McBeath v. Railroad, 20 Mo. App. 445; Brown v. Railroad, 18 Mo. App. 568; Dawson v. Railroad, 76 Mo. 514; Hutchinson on Carriers (4 Ed.), secs. 442, 443.

The application for the contract executed by plaintiffs, recited substantially that they had knowledge the defendant had two rates of freight for the shipment of hogs between the points mentioned; one, a higher rate, upon which it accepted shipments at the carrier's risk, and one, a lesser or reduced rate, under which shipments were made when the shipper forgave certain common law liabilities and agreed to the limitations

thereon contained in the contract. It also recited that plaintiffs had exercised their option in that behalf, chosen the lesser of the two rates and expressed a willingness to abide such limitations upon the defendant's common law liability as were contained in the contract annexed thereto. The contract itself recited on its face that it was based upon such reduced rate; that the rate mentioned therein, twenty-six cents per hundred pounds, was a reduced or special rate and less than the regular charge for shipments at the carrier's risk; and that in consideration of such reduced rate, the stipulations therein contained were entered into. Now it is the established law that while a recital of such consideration in a contract of shipment is not conclusive evidence thereof, it is at least prima facie in that behalf, and unless contradicted and overthrown by competent proof showing otherwise, it will be sustained against a party executing the same when it recites such consideration. [McFadden v. Railroad, 92 Mo. 343, 4 S. W. 689; Hart v. Railroad, 112 U. S. 331.]

The stipulation invoked by the defendant as a bar to plaintiffs' right to recover in this case, was therefore prima facie valid and it devolved upon the plaintiffs to show that no consideration was in fact given for the contract. Learned counsel for plaintiffs, recognizing this rule of law, sought to show that the defendant company had in fact only one rate of freight between the points mentioned for such shipments and that that rate was twenty-six cents per hundred pounds. The contract of carriage was interstate. To the end of showing that defendant had but one rate of freight and thereby impeaching the recitals of the contract to the effect that there were two rates and that plaintiffs had chosen the lesser, they offered in evidence a certificate under the hand and seal of the Secretary of the Interstate Commerce Commission, as follows:

"INTERSTATE COMMERCE COMMISSION
*Washington.*

Secretary's Office.

"I, Edward A. Mosley, Secretary of the Interstate Commerce Commission, and as such officer having custody of the records of said Commission, do hereby certify that St. Louis and San Francisco Railroad Company's Joint Through Freight Tariff No. 270-D (I. C. C. No. 3273) effective November 2, 1903, applying on Live Stock, carloads, between St. Louis, Carondelet, Mo., East St. Louis, Peoria and Chicago, Ill., and stations on the St. Louis and San Francisco Railroad, Kansas City, Clinton and Springfield Railway, The Kansas Southwestern Railway and Denver, Enid and Gulf Railroad, was filed with said Interstate Commerce Commission on October 23rd, 1903, by J. A. Middleton, at that time General Freight Agent of said St. Louis & San Francisco Railroad Company and that said schedule has remained on file in the office of said Commission to date hereof. That said schedule publishes a rate of twenty-six cents per hundred pounds on hogs, carloads, from Mt. Vernon, Mo., to East St. Louis and National Stock Yards, Ill., based upon declared valuation by the shippers of not exceeding ten dollars for each hog, and subject to the following minimum carload weights, viz:

|  | Double-deck, lbs. | Single-deck, lbs. |
|---|---|---|
| Cars 31 ft. and under, | 19,000 | 15,000 |
| Over 31 ft. and including 33 ft. 9 in. | 20,500 | 16,000 |
| Over 33 ft. 9 in. to and includ. 36½ ft. | 22,000 | 17,000 |
| Over 36 ½ ft. to and includ. 40 ft. | 24,000 | 19,000 |
| Over 40 ft. | 26,000 | 21,000 |

"This said rate of twenty-six cents per hundred pounds was in force from and to points on September 11th, 1905, as the records of said Commission show, and applied on hogs, carloads, whether shipped in double deck or single deck cars.

"In Witness Whereof I have hereunto set my hand and affixed the seal of said Commission this 21st day of March, A. D. 1906.

"(Seal.)                    EDWARD A. MOSLEY,

"Secretary of the Interstate Commerce Commission."

There was no copy of defendant's schedule of rates nor tariff sheets annexed to the certificate. Counsel on the part of defendant objected to the introduction of the certificate of the Secretary of the Interstate Commerce Commission for the reasons among others, that it recited defendant's schedules and rates were on file with the commission and that under such circumstances, such schedules and tariff sheets were public documents and a copy thereof should be annexed to the certificate in order that they might speak for themselves as to their contents; and that the recitals in the certificate of the secretary of the commission to the effect that the schedule published a rate of twenty-six cents per hundred-weight on the shipment of hogs, was a conclusion of the secretary; that the best evidence was the schedule itself, duly certified. This objection the court sustained and the plaintiff excepted. There was no other evidence whatever introduced in the case on the question as to whether defendant had one or more rates of freight for the service contemplated. No one testified nor offered to testify that defendant had only one rate. In their efforts to impeach the contract for want of consideration, plaintiffs relied entirely upon the certificate of the Secretary of the Interstate Commerce Commission above set forth. There was no offer of the tariff sheets or schedule of rates with or without the certificate of the secretary of the commission. The question presented must therefore be determined by reference to the competency of the certificate of the Secretary of the Interstate Commerce Commission for the purpose mentioned. Now, upon principle, it is clear that in the

absence of a statute authorizing proof to be made by such certificate, it is entirely insufficient in that behalf. Defendant's schedule of rates on file with the commission is a record required by law and is by express statute, to be preserved as a public record. [Sec. 16, Interstate Commerce Act; rearranged June 29, 1906, Part 1, page 592, Laws of U. S. 1905, 1906. See also Sup. to Snyder's Interstate Com. Act and Federal Anti-Trust Law, p. 28.] What it contains as to rates, or otherwise, can be exemplified only by a copy thereof, or at least, copies of such portions as are pertinent, duly certified by the secretary of the commission, who is their lawful custodian. The recital in the certificate of the secretary to the effect that "said schedule publishes a rate of twenty-six cents per hundred pounds on hogs," is the recital of a conclusion merely on the part of the custodian of the record. Such is certainly not competent. Schedules, or at least such portions thereof as were pertinent to the questions in controversy, should have been brought forward in connection with the certificate of the secretary of the commission to the end that the court might determine whether one or two rates, available to all persons, are published therein. It may have been that the schedule showed the rate of twenty-six cents, as certified by the secretary of the commission; and it may be that it showed as well another rate, higher still. What has been said on this subject must not be regarded as an adjudication to the effect that the schedule rates may not be shown in a manner other than as indicated, for possibly such facts may be shown by the sworn testimony of a witness having competent knowledge on the subject. The question is not before the court and no opinion is given thereon.

After diligent search, we have been unable to discover any statute provision authorizing proof to be made in the manner proffered, as above indicated. On the contrary, the Interstate Commerce Act, as amended,

provides that proof of such schedule and rates may be made in judicial proceedings by producing copies of, or abstracts from, any of said schedules or tariffs, certified by the secretary of the commission under its seal, which shall be received in evidence with like effect as the originals.    In this respect, see the following provisions of sec. 16 of the Interstate Commerce Act, as re-arranged June 29, 1906, Laws of United States, Part I, First Session U. S. Congress, 1905, 1906, at page 592: (also sec. 16, page 28, Supp. to Snyder's Ann. Interstate Commerce Act and Federal   Anti-Trust   Laws, 1906.).

"The copies of schedules and tariffs of rates, fares, and charges and of all contracts, agreements, or arrangements between common carriers filed with the Commission as herein provided, and the statistics, tables, and figures contained in the annual report of carriers made to the Commission, as required by the provisions of this act, shall be preserved as public records in the custody of the secretary of the Commission, and shall be received as prima-facie evidence of what they purport to be for the purpose of investigation by the Commission and in all judicial proceedings; and copies of or extracts from any of said schedules, tariffs, contracts, agreements, arrangements, or reports made public records as aforesaid, certified by the secretary under its seal, shall be received in evidence with like effect as the originals."

From what has been said, it appears plaintiffs wholly failed to impeach the contract by showing that it was without consideration.    The contract purporting a sufficient consideration on its face, is conclusive in the absence of proof to the contrary, and plaintiffs were not entitled to recover.    The court did not err in directing a verdict for the defendant.    The judgment will be affirmed.    *Bland, P. J.,* and *Goode, J.,* concur.