# THE STATE v. WILLIAM PINSON, Appellant.

## Division Two, January 2, 1922.

1. **WITNESSES: Indorsement on Information: Surprise: Continuance.** The statute requires the names of all witnesses to be indorsed on the information, and provides that other witnesses may be subpœnaed and sworn by the State; and defendant should except to the action of the court in permitting the names of additional witnesses to be so indorsed and in denying him a continuance on account of such indorsement; and if he has been denied a continuance and is surprised by the evidence of a witness whose name is so indorsed, he is still entitled, on his motion for a new trial, to show that he had been entrapped or that the evidence was false, and the court, in the exercise of a sound discretion, would be authorized, upon such showing, to set the verdict aside.

2. **BIGAMY: Prima-facie Case.** Uncontradicted evidence that defendant and a certain woman had lived together as husband and wife for more than ten years, that he introduced her as his wife, that when arrested he stated he was married to her in a certain other State more than ten years before, and that when asked by her why he had married another woman he further stated that he did not think she would care, makes out a prima-facie case of bigamy, and the State is not required to go further and prove that the marriage has not been dissolved, knowledge of that fact being peculiarly within defendant's cognizance.

3. ———: **Record of Marriage.** A certified copy of the record of the marriage license issued to defendant in another State and the minister's return thereon, unauthenticated in the manner prescribed by the Act of Congress, is not admissible in evidence; but its admission will not work a reversal where there was ample competent evidence, without such records, to [establish] the marriage and defendant's guilt of the charge of bigamy.

4. ———: **Lawful Wife: Incompetent Witness.** In the trial of defendant for bigamy, his lawful (or first) wife is an incompetent witness for the State, but the other woman, to whom he was married before the lawful marriage was dissolved, is a competent witness. But notwithstanding his lawful wife erroneously permitted to testify, her testimony will not constitute reversible error if the first marriage was clearly proven by the uncontradicted testimony of competent witnesses.

5. ————: Charge: Instruction. A charge that defendant had pre-
viously married a woman of a certain name and that she was
his lawful wife at the time of his second marriage is descriptive
of the offense of bigamy, and proof thereof is necessary; and
in such case it is sufficient to instruct the jury that if they
find from the evidence that at the time he married the second
woman he! was a married man and had a living wife they would
find him guilty. It is not necessary to instruct that he must have
been married by a minister of the gospel or other person author-
ized by law to perform a marriage ceremony.

6. INSTRUCTIONS: On Whole Law. A complaint that the trial
court did not instruct on all the law of the case, unless called
to the attention of the court in the motion for a new trial,
will not be considered on appeal.

7. ARGUMENT TO JURY: Admonition: Sufficiency Accepted. Where
the trial court sustained defendant's objection to a remark by
the circuit attorney in his argument to the jury, and at his re-
quest admonished him that the remark was an improper state-
ment, and no request for further admonition was made and no
exception was saved, and the remark itself does not seem repre-
hensible, on appeal it will not be held that defendant did not
have a fair trial.

Appeal from St. Louis City Circuit Court.—*Hon. Vital
W. Garesche,* Judge.

AFFIRMED.

*William E. Fish* and *Roy A. Fish* for appellant.

(1) The court should have sustained the demurrer
offered by the defendant at the close of the State's case.
(2) The court committed error in giving the instruction
which assumed that the first marriage was performed by
a minister of the gospel who was authorized to perform
marriages, and that said marriage was to Mary Pinson.
(3) The court committed error in giving the instruction
declaring "that it devolves upon the defendant to prove
a divorce," and thereby called the jury's attention that
the defendant had not testified in the case. (4) The
court committed error when it allowed the State to put
the true and legal wife on the witness stand and give testi-

mony in the case against her husband. (5) The court committed error in allowing the State's attorney to inform the jury that the defendant's attorney expected to keep the case from the jury, and refused to admonish the State's attorney. (6) The court committed error in allowing the State's attorney on the day of trial to endorse the names of five witnesses on the information and in forcing the defendant to trial on that day. State v. Roy, 83 Mo. 269, 270; State v. Lawson, 239 Mo. 591; State v. Barrington, 198 Mo. 66; State v. Henderson, 186 Mo. 473; State v. Nettles, 153 Mo. 470; State v. Shreve, 137 Mo. 5; R. S. 1919, sec. 4036; Kelly's Crim. Law, p. 834; State v. Ulrich 110 Mo. 364.

*Jesse W. Barrett,* Attorney-General, and *Robert W. Otto,* of counsel, for respondent.

(1) The court did not err in permitting Mary Pinson to testify as to her maiden name and her marriage name. State v. Williams, 202 Mo. App. 536, 548; Burton v. State, 51 Tex. Crim. 196; Holland v. State, 60 Tex. Crim. 117. (2) The court did not err in permitting the names of witnesses to be indorsed on the back of the information. State v. Barrington, 198 Mo. 66; State v. Jeffries, 210 Mo. 322; State v. Rasco, 239 Mo. 553. This question is not before this court for review. The bill of exceptions or record does not disclose that the plea of guilty was withdrawn, nor was any motion to quash the information nor an application for a continuance filed. State v. Kehoe, 220 S. W. 961; State v. Ferguson, 278 Mo. 119, 134; State v. Stegner, 276 Mo. 427, 438; State v. Lee, 231 S. W. 619. (3) The remarks of the assistant circuit attorney were not improper. Error cannot be predicated upon sustained objections. The court fully sustained the objection and rebuked counsel. State v. Butler, 258 Mo. 430, 437; State v. Miles, 199 Mo. 530, 560; State v. Grant, 144 Mo. 56, 65. Counsel failed to request a further rebuke or to save his exception to the sufficiency of the court's rebuke. State v. Wana, 245 Mo. 563;

State v. Harrison, 263 Mo. 662; State v. Rasco, 239 Mo. 579; State v. Raftery, 252 Mo. 83. The remark was not a comment on the defendant's failure to testify. State v. Pfeiffer, 267 Mo. 23; State v. Preston, 77 Mo. 294; State v. Prunty, 276 Mo. 359. Counsel failed to request court to rebuke counsel for the State and failed to except to the court's failure to rebuke counsel. State v. Valle, 196 Mo. 34; State v. McCarver, 194 Mo. 740. Should the remark made be considered a comment on the failure of the defendant to testify, then in view of the entire record no substantial harm resulted to the defendant and this comment should be overlooked by the court. State v. Flick, 198 S. W. 1134; State v. Taylor, 134 Mo. 157.

HIGBEE, P. J.—The appellant was charged on the information of the circuit attorney with the crime of bigamy, in this, that on February 12, 1920, at the city of St. Louis in the State of Missouri, he unlawfully and feloniously did marry and take to wife one Ethel Daniels, he, the said William Pinson, then and there having a lawful wife living, to-wit, Mary Pinson. The jury returned a verdict of guilty and assessed the defendant's punishment at imprisonment in the penitentiary for two years.

Five witnesses testified that they had known the defendant and his wife, most of them intimately, since the year 1909; that during all that time the defendant and Mary Pinson held each other out and cohabited together as husband and wife in the city of St. Louis; that the defendant introduced Mary Pinson as his wife to some, and she introduced him to others as her husband. Mary Pinson was employed as a pastry cook for five or six years successively in two different hotels, and during those years she and the defendant occupied the same room and bed and were known as husband and wife. Samuel A. Mosely, a minister of the gospel, testified that he knew the defendant and Ethel Daniels, (who was present in court and identified by the witness); that they were members of his congregation; that he joined them in marriage in his house in the city of St. Louis on Feb-

ruary 12, 1920; that they had a marriage license; that he made his return on it; that he was a regularly ordained minister, and was connected with the Tabernic Baptist Church. Officer Meier, of the metropolitan police force, testified that he assisted in the arrest of the defendant on February 27th on the complaint of his first wife; that the defendant said in her presence that he had married Mary Pinson in Atlanta, Georgia, about ten years ago. "Q. Who did he say he had married? A. Mary Pinson. Q. Is that the lady in the first seat? A. Yes sir; and she wanted to know why he married again and he told her he did not think she would care."

The State read in evidence over the defendant's objection, a certified copy of the record of a marriage license issued July 11, 1908, by John R. Wilkinson, Ordinary, of Fulton County, Georgia, authorizing the marriage of Will Pinson (col.) and Mary Carvield (col.), with the return by J. P. Jackson, minister of the gospel, certifying that they were joined in matrimony by him on July 12, 1908. This record was certified to be a true copy of the marriage license and certificate of marriage aforesaid, purporting to be signed by the Ordinary of Fulton County, Georgia, and under his official seal. The State had previously read in evidence the pertinent sections of the statutes of Georgia as to the duties of the Ordinary, including the issuance and recording of marriage licenses and the returns thereon.

Ethel Daniels, called by the State, was asked: "Q. You live with the defendant Pinson?

"Counsel for the defendant thereupon interrogated the witness as follows: Q. You are the woman who was married by the preacher Mosely to this defendant? A. Yes sir. By Mr. Fish: We object because she is the true and lawful wife of Pinson at this time and it has not been shown that he had a former wife living. By the Court: Overruled and exceptions saved.

"By Mr. O'Brien: Where does Pinson live? A. I refuse to answer because it might incriminate me."

Mary Pinson, over the objection of the defendant, testified that her maiden name was Mary Carvield. This was all the evidence.

The court gave instructions to the jury in substance as follows:

1. If you find from the evidence that the defendant was, on July 12, 1908, in Fulton County, Georgia, lawfully married by P. J. Jackson to Mary Pinson, and that said Jackson was then and there a minister of the gospel, and that he performed the ceremony of the marriage as such minister of the gospel, and if you further find from the evidence that afterwards while the marriage relation between defendant and Mary Pinson continued (if you find they were married as above stated) and while said Mary Pinson was living the defendant was married by S. A. Mosely, a duly ordained minister of the gospel at the City of St. Louis, Missouri, on February 12, 1920, to the witness Ethel Daniels, then you should find the defendant guilty, etc.

2. Before you can find the defendant guilty of bigamy in this case, you must be satisfied by the evidence beyond a reasonable doubt that the defendant is the same person who was married by P. J. Jackson, a minister of the gospel, at the city of Atlanta, Fulton County, Georgia, to Mary Pinson, on July 12, 1908, and who was married by S. A. Mosely, a minister of the gospel, to Ethel Daniels, on February 12, 1920, and that said Mary Pinson was then living and the wife of the defendant.

2a. That unless you find beyond a reasonable doubt that on July 12, 1908, the defendant was lawfully married in the State of Georgia to Mary Carvield, and that said marriage was performed by a person authorized by the laws of the State of Georgia to perform the marriage ceremony, and that such marriage was a legal marriage, you will acquit the defendant.

2b. If you find the defendant was lawfully married to Mary Carvield as set forth in a previous instruction and that Mary Pinson is still alive, the burden of proving a divorce is on the defendant.

The court also instructed on reasonable doubt and the credibility of the witnesses.

The defendant excepted "to the giving of the instructions as not fully declaring the law, and to Instruction 1, as the court has assumed that the marriage in Atlanta, Georgia, was by a minister of the gospel and there is no evidence in this case that the defendant was ever married by a minister of the gospel at such time and place." Defendant also excepted to Instruction 2 "because the burden of proof never shifts from the State to the defendant in a case of this kind, and because it is a comment that the defendant did not testify in this case."

When the case was called for trial, the circuit attorney announced that he had indorsed the names of five witnesses on the information. Mr. Fish, attorney for the defendant, suggested a continuance for two weeks, saying, "It is not right for him to stick these five additional witnesses on us this morning; it does not give us the opportunity to bring in the evidence necessary." The court excused the witnesses until the following day, selected and admonished the jury and excused them for the day. When court convened on the following morning, defendant's counsel stated that he wanted to object to the court's action in allowing the circuit attorney yesterday to indorse upon the indictment the names of the five witnesses; that the defendant was not prepared to go to trial on account of being surprised by the action of the circuit attorney; that he had not had sufficient time to meet and rebut this evidence, having no knowledge of it until yesterday, and asked the court before the jury is sworn to continue the case for the reasons stated. This request was refused and the defendant excepted. Thereupon the jury was sworn and the trial proceeded.

I.    There was no exception saved at the time to the action of the court in permitting the names of the five additional witnesses to be indorsed on the information. The statute requires the names of all witnesses for the State to be indorsed on the indictment (Sec.

Witnesses.

3889, R. S. 1919) and the information as well (Sec. 3849, R. S. 1919). The statute provides that other witnesses may be subpoenaed or sworn by the State. [State v. O'Day, 89 Mo. 559, 1 S. W. 759; State v. Steifel, 106 Mo. 129, 17 S. W. 227.] In State v. Myers, 198 Mo. 225, 94 S. W. 242, referring to State v. Henderson, 186 Mo. l. c. 482, and State v. Barrington, 198 Mo. 23, it was said:

"There might be a case so flagrant as to amount to a surprise, and upon a proper showing that the defendant if advised that the particular witness would be called against him would have been able to impeach his character or contradict his testimony by other witnesses, . . . the court could grant a new trail. But in this case, it is not contended that the prosecuting attorney purposely refrained from indorsing the names of the witnesses on the information, in order to obtain an undue advantage of the defendant." [P. 246.]

The defendant made no showing that entitled him to a continuance. If defendant was surprised by the evidence of any witness whose name was so indorsed on the information, he still had an opportunity, on motion for new trial, to show his ability to impeach the character of such witness or contradict such testimony. This question is further considered in State v. Lawson, 239 Mo. 591. If it had been shown to the court that the purpose of the prosecution was to gain undue advantage of the defendant by entrapping or surprising him with false testimony or if, after the verdict, the defendant in any proper manner had shown that he had been entrapped or that the evidence was false and his conviction unwarranted, the court, in the exercise of a sound discretion, would have been authorized to set aside the verdict. But for the court to have excluded the witnesses whose names were indorsed on the information after the case was called for trial, would have been to disregard the statute which expressly authorizes the calling of other witnesses for the State.

II. The demurrer to the evidence was properly overruled. The evidence for the State showed without contradiction that the defendant and Mary Pinson had lived together as husband and wife in the city of St.

**Prima-facie Case.**

Louis for more than ten years before the information was filed; that he introduced her as his wife and when arrested stated to the officer that he was married to Mary Pinson at Atlanta, Georgia, more than ten years ago, and when asked by his wife why he married Ethel Daniels, he said to her he supposed she would not care. When these facts were shown, the State made out a prima-facie case (Erwin v. Nolan, 280 Mo. 401, 414; State v. Cooper, 103 Mo. 266, 271; State v. Ulrich, 110 Mo. 350, 366; State v. Harris, 283 Mo. 99, 109), and was not bound to go further and prove that the marriage had not been dissolved, the knowledge of that fact being peculiarly within the cognizance of the defendant. [7 C. J. 1171; People v. Spoor, 235 Ill. 230, 85 N. E. 207; Bennett v. State, 100 Miss. 684, 56 So. 777; State v. Gonce, 79 Mo. 600.]

The case is wholly unlike Jackson v. Phalen, 237 Mo. 142. That was an action to quiet title to certain lands which belonged to Joseph C. Howell at his death. The plaintiffs were the subvendees of Sobrina Howell, who elected to take one-half of the estate as the widow of said Howell, in lieu of dower. Howell also left one son who was reared by Sobrina and treated as her child. This child died without issue, and Sobrina claimed the other half of the land as his heir and sold the land to the plaintiff. Sobrina had been lawfully married to William Brainard in 1865. Ten years later she married Joseph C. Howell. Each marriage was celebrated according to legal formalities. This court said: "Nothing else appearing, the law in the interest of society presumes there were no legal obstacles to the second marriage, and that it made the parties husband and wife. In support of this presumption, the law infers, in the absence of contrary evidence, that the first marriage was dissolved by death

or divorce.'' [Cases cited.]   Here, however, the defendant, being confronted by his first wife with whom he had cohabited for more than ten years, confessed both marriages and did not pretend to have been divorced from the first wife.   There is no analogy between the two cases, the distinction being obvious.

The evidence was ample to establish the first marriage without the introduction of the certified copy of the marriage license and the return of the officiating minister, which will be considered later.   [7 C. J. 1175.]   The second marriage was, not only proven, but was admitted at the trial.   Instruction 2 is not a comment on defendant's failure to testify.

III.   We think the court erred in admitting the certified copy of the record of the marriage license and the return thereon.   It purported to be a true copy from the record (which the law required to be kept) by the proper officer and under his official seal.   It was **Proof of Formal Marriage.** not authenticated in accordance with the Act of Congress in relation to the authentication of laws and records.   [Sec. 1520, p. 4284, R. S. 1919.]

IV.   We think the court also erred in permitting Mary Pinson to testify that her maiden name was Mary Carvield.   She was shown to be the lawful wife of the defendant and was an incompetent witness. **Testimony of First Wife.** [Kelly's Crim. Law (3 Ed.) sec. 931.]   But neither her testimony nor the introduction of the certified copy of the record of the marriage is reversible error, for the reason that the first marriage was clearly proven by competent witnesses whose testimony was uncontradicted.   The first marriage having been proven, Ethel Daniels, the second wife, was a competent witness.   [Kelly's Crim. Law, supra.]

V.   The information charged that the defendant had a lawful wife living at the time of his second marriage, to-wit, Mary Pinson.   If it had charged that the defend-

ant had previously married a woman by the name of Mary Carvield and that she was his lawful wife at the time of the second marriage, that would have been descriptive of the offense and proof thereof would have been necessary. It would have been sufficient on this point to have instructed the jury that if they should find from the evidence that at the time defendant married Ethel Daniels he was a married man and had a wife living at that time, they should find him guilty. [State v. Edmiston, 160 Mo. 500, l. c. 502.] The instructions complained of by the defendant placed too much of a burden on the State, and in the absence of a duly authenticated copy of the record of the first marriage should not have been given. But this was not reversible error.

**Charge: Instruction.**

VI. The defendant complained that the court did not instruct the jury on all the law of the case. This complaint was not called to the attention of the court in the motion for a new trial and cannot be considered.

**Motion for New Trial.**

VII. The defendant also complained of improper remarks of the circuit attorney in his closing argument to the jury. The statement was:

"Mr. Fish started out with a technical defense that he thought would prevent this case even going to you gentlemen, but he fell down on that."

"MR. FISH: We object to that statement and ask that it be stricken out."

"BY THE COURT: The objection will be sustained."

"MR. FISH: And ask that the circuit attorney be admonished."

"BY THE COURT: That is an improper statement, Mr. O'Brien."

This is the only statement complained of in the motion for new trial. The court sustained the objection and admonished the circuit attorney as requested.

In State v. Butler, 258 Mo. 430, l. c. 437, we said: "Appellant made no further request nor saved any exception on the ground that the action of the court was not sufficient to right the wrong. It is, therefore, to be assumed that appellant considered the action of the court sufficient in that regard. We have reached the same conclusion. Furthermore, absent such objection and exception, it is the well-established general rule that the remarks of the attorney will not necessarily cause a reversal of the case. [State v. McMullin, 170 Mo. 608; State v. Phillips, 233 Mo. 299; State v. Souva, 234 Mo. 566; State v. Rasco, 239 Mo. 535; State v. Wana, 245 Mo. 558.]"

The trial of a criminal case should always be conducted in an orderly and dignified manner, with scrupulous care for the right of the accused. It is not, however, a tea-party. There is unavoidably more or less sparring between counsel, who must be allowed reasonable latitude in their arguments to the jury. Defendant's counsel had unsuccessfully demurred to the evidence. Evidently he had expected the court to direct an acquittal of his client on what he believed to be a failure on the part of the State to make a submissible case. The circuit attorney probably alluded to this when he said defendant's counsel "fell down on that." The record does not show that the demurrer was offered out of the presence of the jury. However, we fail to see anything reprehensible in the remarks complained of. The court sustained the objection and admonished the prosecuting attorney that the statement was improper. This was all the defendant's counsel asked. The court was in a better position to judge of the propriety or impropriety of the remark than we are.

The defendant had a fair trial and the judgment is affirmed. All concur.