THE STATE v. FRED HENDRIX, Appellant.—56 S. W. (2d) 76.

Division Two, December 14, 1932.

*Collins & Osborn* and *R. K. Phelps* for appellant.

*Stratton Shartel,* Attorney-General, for respondent; *Robert B. Denny* of counsel.

COOLEY, C.—In the Circuit Court of Cedar County, defendant was convicted under an information charging that on the ——— day of February, 1922, being lawfully imprisoned in the county jail on a charge of. assault with intent to rob and murder one W. D. Murphy, he feloniously broke jail and escaped therefrom. The charge is based upon Section 3916, Revised Statutes 1929. The information was filed September 10, 1931. In order to avoid the bar of the Statute of Limitations the information charged that from the time of his escape until February 1, 1931, defendant had been a fugitive from justice and a nonresident of this State. Defendant was sentenced in accordance with the verdict of the jury to two years' imprisonment in the penitentiary and has appealed.

The evidence offered by the State tended to show that in November, 1921, defendant was charged by complaint before a justice of the peace with the crime of assault with intent to "kill and rob" W. D. Murphy, was given a preliminary hearing, bound over to the circuit court and failing to make bond was committed to jail. In the same month he escaped from jail and fled to Texas whence he was brought back on requisition and again lodged in jail. In February, 1922, he again escaped. The evidence was sufficient to sustain the charge in the information of breaking and escaping from jail. Defendant offered no evidence and has filed no brief in this court. Further facts will be given in connection with the legal propositions to which they respectively apply.

■ I. The State introduced in evidence, over the objections of defendant, the transcript of the justice before whom defendant's preliminary examination had been held, showing the arrest and examination of defendant and the issuance of a commitment upon his failure to give bond. There was also introduced the warrant for defendant's arrest which had been issued by the justice upon the filing of the complaint, together with the sheriff's return thereon. Some objections were made to the warrant and the return which we deem without merit but shall not discuss because not preserved in the motion for new trial.

■ The justice's transcript was produced by the clerk of the circuit court from his files as part of the "original rolls in the case of the State of Missouri v. Fred Hendrix in which he is charged with assault upon one W. D. Murphy." These papers did not bear a filing mark of the circuit clerk showing their filing in his office but were found by him in the files of the case in his custody. It is charged as error in defendant's motion for new trial that "the court erred in permitting the State to introduce as evidence the files in the case of the State of Missouri v. Fred Hendrix purporting to charge him with assault with intent to kill and rob one Murphy, said files showing on their face that they had never been filed in the cause."

By statute, now Section 3489, Revised Statutes 1929, the justice before whom a preliminary examination is held is required to certify the examination and all recognizances taken by him and deliver same to the clerk of the circuit court having cognizance of the felony charged on or before the first day of the next term of said court. The circuit clerk thereupon becomes the custodian of such transcript and papers so delivered to him. The statute does not prescribe that he shall endorse upon them a filing mark showing the fact and date of their delivery to him. Such filing mark could be at most only evidence of such facts. Since the transcript was found in the files of the case

in the custody of the officer in whose custody it should be and natural-ly would be, assuming right action and compliance with statutory duty by the justice, the absence of a filing mark did not tend to sus-tain defendant's contention that the papers in question showed "on their face that they had never been filed in the cause." The au-thenticity of the transcript was not questioned. The court did not err in admitting it.

II. Complaint is made of the admission of testimony of George Maderus and C. T. Church relative to the commitment of defendant to the county jail "because the records of the commitment are the best and only competent evidence." Church was sheriff and Maderus deputy sheriff at the time of defendant's preliminary ex-amination. Maderus testified that he had arrested defendant under the warrant issued by the justice, as shown by his return which was in evidence, and that after the preliminary "I turned him over to Mr. Church." Church testified that after the preliminary he "received" the defendant, took him to jail and placed him therein. There was no objection to that part of Church's testimony nor to the testimony of Maderus that he attended the preliminary and thereafter turned defendant over to Mr. Church. The objections offered were to Ma-derus' testimony relative to arresting and lodging defendant in jail before the preliminary under the warrant of arrest. There is no merit in this assignment of error.

III. In order to prove the allegations of the information that from the time of his escape until February 1, 1931, defendant had been continuously a fugitive from justice and a nonresident of the State, and thus avoid the bar of the Statute of Limitations, the State introduced and relied solely upon certain documentary evidence, Ex-hibits C and D. Both were admitted over defendant's objections and exceptions and the motion for new trial sufficiently presents the court's ruling for our review.

Exhibit C, as introduced, is a certificate of "R. D. Payne, secre-tary to the warden of the Kansas State Penitentiary." As at first offered, we gather from the remarks of court and counsel, the exhibit included copies of certain records or documents and perhaps photo-graphs. After lengthy objections by defendant's counsel and con-siderable colloquy with State's counsel, the latter withdrew his offer of all of the exhibit except Mr. Payne's certificate, which was ad-mitted. It is as follows:

"I, R. D. Payne, Secretary to the Warden of the Kansas State Penitentiary, Lansing, Kansas, do hereby certify that the above and foregoing is a full, true and correct copy of the commitment papers in the case of Fred Hendrix, No. 8966 in the Kansas State Peni-

tentiary, as received from the Clerk of the District Court of Leavenworth County, Kansas; that said Fred Hendrix was received at this institution May 7, 1925, under a sentence of five to ten years for Burglary in the second degree, and one to five years for Larceny; that he was paroled from this institution December 23, 1930. His record at this institution shows that he served a term in the Oklahoma State Penitentiary as No. 12164, P. L. Shannon. Picture and finger print classification attached.

"(Signed) R. D. PAYNE."

The above was sworn to before a notary public. Omitting heading which shows, "R. A. Shackleford, Bertillon Clerk," Exhibit D is as follows:

"OKLAHOMA STATE PENITENTIARY, S. E. Brown, Warden, McAlester, Okla. CRIMINAL HISTORY. P. L. Shannon # 12164: :received at the Oklahoma State Penitentiary 3-27-22 from Lincoln County under sentence of five (5) years for the crime of Larceny of an Automobile. 12-16-24: :Expiration Pardon.

"State of Oklahoma ) ss.
"County of Pittsburg (

"I, R. A. Shackleford, Bertillon Expert and Record Clerk in and for the Oklahoma State Penitentiary, located at McAlester, Oklahoma, do certify that the above and foregoing is a true, correct and complete copy of the criminal history of P. L. Shannon, as same as shown on the record of this 'Bureau.'

"(Signed) R. A. SHACKLEFORD, Bertillon Expert and Record Clerk."

This also was sworn to before a notary public. Exhibits C and D were designed to show that defendant was in the Oklahoma Penitentiary, under the name of Shannon, from March 27, 1922, to December 16, 1924, and in the Kansas Penitentiary from May 7, 1925, to December 30, 1930, and therefore, the State argues, a nonresident of Missouri for enough of the time between his escape and the filing of the information to leave less than the three year period of limitation. The only evidence tending to show that P. L. Shannon, named in Shackleford's certificate was the same person as Fred Hendrix named in Payne's certificate is Payne's statement in the latter instrument.

The State contends that the certificates were admissible and sufficient for the purpose for which they were offered, under Section 1661, Revised Statutes 1929, notwithstanding they were not authenticated pursuant to Act of Congress, 28 U. S. C. A., sec. 688 (see R. S. Mo. 1929, Vol. II, p. 3798). Defendant's objection was on the ground, among others, that the purported exemplifications of records were not authenticated in accordance with the Act of Congress. The Missouri statute, said Section 1661, reads:

"All records and exemplifications of office books, kept in any pub-

lic office of the United States, or of a sister state, not appertaining to a court, shall be evidence in this State, if attested by the keeper of said record or books, and the seal of his office, if there be a seal.''

(a) Disposing first of defendant's said contention relative to authentication, we hold that exemplifications of records referred to in Section 1661, supra, attested as therein provided, are admissible in evidence though not attested or authenticated in accordance with the provisions of the Act of Congress. The Federal statute is not exclusive of legislation by the State and a state statute providing for a mode of authenticating such documents, which does not *exclude* documents authenticated as provided by the Federal act, is valid and may be followed. [5 Chamberlayne on Evidence, sec. 3486, p. 4793; 22 C. J. sec. 1008, p. 848, sec. 1020, p. 853.]

In Karr v. Jackson, 28 Mo. 316, it was held that the mode of authenticating records of the different states prescribed by the laws of the United States is not exclusive of the common-law modes of proving the same. We see no reason why a state may not by statute provide that in its own courts documents shall be admissible as evidence when attested in a prescribed mode less formal than that required by the Federal law, if such mode does not exclude documents authenticated as prescribed by the Federal Act. The Federal statute does not provide that records and exemplifications of books, etc., of a state shall *not* be admissible in courts of a sister state unless authenticated as therein provided. It only provides affirmatively that if so authenticated they shall be so admissible. The Karr case was cited with approval by this court in Moore v. Gaus & Sons Mfg. Co., 113 Mo. 98, 109, 20 S. W. 975. That our statute governs seems to have been recognized, but without discussion, in Brecker v. Fillingham, 209 Mo. 578, 584, 108 S. W. 41, where, however, the certificate in question was held incompetent for other reasons.

In State v. Pinson, 291 Mo. 328, 236 S. W. 354, 357, this court said that a marriage record of a sister state, certified by the keeper thereof, the law of such state showing him to be the keeper being in evidence and the certificate being evidently attested as required by our Section 1661, supra, had been improperly admitted because not authenticated in accordance with the Act of Congress. There is a similar ruling, or at least implication, in State v. Warren, 317 Mo. 843, 856, 857, 297 S. W. 397, 403. Both those cases were in this division of the court. In both the court evidently overlooked our statute, Section 1661, supra. In so far as those cases hold or may be understood to hold that records and exemplifications of office books kept in any public office of the United States or of a sister state, attested as provided in Section 1661, supra, are not admissible in evidence in our courts they should not be followed and are hereby overruled.

(b) This brings us to consideration of the State's contention

that under our statute the documents were admissible and were sufficient for the purpose for which they were offered. We think it clear they were not.

In State v. Pagels, 92 Mo. 300, 310, 4 S. W. 931, it was held:

"In order for the introduction, as evidence, of certified copies of the records of the hospitals for the insane at Anna and Jacksonville, Illinois, it was necessary, under the terms of Section 2285 (now Section 1661) to show that such institutions were '*public offices* of a sister state.'"

For like reason death certificates from another state were held properly excluded in State v. Warren, supra, 317 Mo. l. c. 856. On this subject Priddy v. Boice, 201 Mo. 309, 333 et seq., 99 S. W. 1055, and State v. Tarwater, 293 Mo. 273, 281 et seq., 239 S. W. 480, though not involving exactly similar records, may be read with profit.

In the instant case no statute of Oklahoma or Kansas was introduced showing what records, if any, are required by law to be kept by those in charge of the penitentiaries, who is by law required to keep them or what facts are to go into such records. Doubtless the laws of each state require records to be kept by those institutions. Even if we might assume that the keeper of a penitentiary must, from the nature of his duties, keep a record of the reception and discharge of prisoners, though no statute commands it (see White v. United States, 164 U. S. 100, 17 Sup. Ct. Rep. 38, 41 L. Ed. 365; State v. Tarwater, supra, and cases cited) and that his office might therefore be treated without proof as a public office within the meaning of our statute, we are still left without any showing that the persons who made the certificates in question were the keepers of the records they purported to attest. The statute requires the attestation to be by the keeper of the records or books and the seal of his office, if there be a seal. When the statutory mode of authentication is relied upon, the attestation should comply substantially with the statutory requirements. Where copies of records are offered it should appear that the officer by whom they purport to be certified had the right to the custody of the records and was the person who had the right to furnish authenticated copies. [Woods v. Banks, 14 N. H. 101, 109; 22 C. J. p. 835, sec. 975.]

For a further reason the certificates were erroneously admitted. In Exhibit C the copy of commitment papers referred to was not introduced, as above shown. The statement "that said Fred Hendrix was received at this institution May 7, 1925, under a sentence of five to ten years for Burglary in the second degree and one to five years for Larceny; that he was paroled . . . December 23, 1930," does not purport to be *a copy of the record.* It is *Payne's statement* of what the record shows. He certifies to the purported fact, not to an exemplification of the record showing the fact. So also the state-

ment that: "His record at this institution shows that he served a term in the Oklahoma State Penitentiary as No. 12164, P. L. Shannon."

It is not competent, unless made so by statute, for the certifying officer to certify his conclusion of what the record shows. [22 C. J. p. 838, sec. 980; Major v. Watson, 73 Mo. 661; Carr v. Youse, 39 Mo. 346; Shelton v. St. Louis, etc., Railroad Co., 131 Mo. App. 560, 110 S. W. 627; Brecker v. Fillingham, supra.] .

Further, as to the statement that Hendrix' record at the Kansas Penitentiary shows that he served a term in the Oklahoma Penitentiary as No. 12164, P. L. Shannon, we doubt the competency of that part of the record of the Kansas Penitentiary if a copy of the record itself had been offered, at least unless the alleged fact constituted part of the record required by law to be kept. Otherwise it would clearly be hearsay. Except for that statement which, for the reasons pointed out, did not constitute legal evidence of the purported fact, there was no showing that said P. L. Shannon was the same person as the defendant, hence there was no basis for the introduction in evidence of Exhibit D even had it been sufficiently attested. From the foregoing it follows that both exhibits were incompetent, leaving the State's case without any proof to avoid the bar of the Statute of Limitations.

Criticism is made of a part of the State's instruction relative to defendant's alleged nonresidence which need not be discussed as it may not arise on another trial. For the reasons set forth the judgment of the circuit court is reversed and the cause is remanded. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.