## THE STATE v. EDWARD CARROLL and EDWARD GLEASON, Appellants.

### Division Two, November 24, 1908.

1. **ROBBERY: Information: Without Consent.** It is not essential to the validity of an information charging an attempted robbery that it charge an intent to deprive the owner of his property without his consent. If it charges that the attempt was with violence and by force and against his will, no force is added to the charge by saying it was "without his consent."

2. **————: ————: Ownership of Property.** It is not necessary in a robbery case or a case of attempted robbery, that the information charge or the evidence show who was the actual owner of the money which defendant attempted to steal. If the information charges that Hoxey was in the actual possession of the property that is sufficient, and if the evidence shows that it was in his actual possession it is sufficient to sustain the charge, whether Hoxey or a corporation or partnership for whom he was the manager was the actual owner. If Hoxey was in the lawful possession of the money the information should charge that Hoxey was the owner and that defendant attempted to rob Hoxey of his money and property, although the money may have belonged to a company or corporation.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*C. Orrick Bishop* and *Henry M. Walsh* for appellants.

(1) The indictment charges that the defendants named assaulted T. P. Hoxey and did feloniously attempt to rob, steal, take and carry away the money and personal property of the said Hoxey, etc., with the intent then and there to deprive the owner of the use thereof and to convert the same to their own use, but wholly fails to charge an intent to deprive the owner of the use thereof without his consent, an essential

element of the crime of larceny, of which robbery is but an aggravation.    The indictment therefore only charges a trespass and not an attempted larceny.    (2) There is no evidence in the case as to whom the money alleged to be in the safe, and which appellant is charged with attempting to steal by violence, belonged.    The prosecuting witness stated that his employment in the Buss mill was that he was in charge of the whole plant and that the money belonged "to the J. B. Buss Mills" but it was not disclosed what "The J. B. Buss Mills" was—a company, corporation, partnership or individual.    The court also undertook in its instructions to bolster up this defect in the evidence by telling the jury that if they believed, etc., "that such money or property was either the property of said T. P. Hoxey or the property of a company or corporation by whom said Hoxey was then and there employed and for whom the said Hoxey then and there had sole charge, possession and responsibility of the said money or property" (instruction second).    There was no claim of any kind that the money or property was the individual money or property of the prosecuting witness, but on the contrary that he was in charge of it for somebody else.    It is true the statute reads: "or who shall be convicted of feloniously taking the property of another from the person of his wife, servant, clerk or agent in charge thereof," etc. (R. S. 1899, sec. 1893; amended, Laws 1903, p. 162); nevertheless, it must appear that the property in question belonged to somebody—a company, corporation, person or individual; and how is it possible to tell from the evidence what was "The J. B. Buss Mills?" and there is no question here of an unknown owner.    State v. Davis, 138 Mo. 107; State v. Horned, 178 Mo. 59; State v. Jones, 168 Mo. 398; State v. Kelley, 206 Mo. 685.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1) The information is sufficient in form and substance and follows the language of the statute which describes the offense.    State v. Lamb, 141 Mo. 301. (2) In the information it was laid that the money was the property of T. P. Hoxey.    The evidence showed that the money was the property of the J. B. Buss Mills, and that the same, at the time of the attempted robbery, was in the possession and proper custody of T. P. Hoxey by virtue of his employment as manager, servant and agent of the J. B. Buss Mills.    (a) The information properly charged the attempted robbery of Hoxey and laid the property in him.    Laws 1903, p. 162; State v. Montgomery, 181 Mo. 19.    (b) And there is no ground upon which to raise the question of variance between the statement in the information as to ownership and the evidence adduced in proof thereof.    R. S. 1899, sec. 2534; State v. Nelson, 101 Mo. 477; 4 Elliott on Evidence, sec. 3130.

FOX, P. J.—This cause is here upon appeal by the defendants from a judgment in the circuit court of the city of St. Louis, convicting them of the offense of attempted robbery in the first degree.    The offense upon which the judgments are predicated was thus charged in an information filed by the assistant circuit attorney:

*"State of Missouri, City of St. Louis, ss.*

"Circuit Court, City of St. Louis, December Term, 1906.

"Richard M. Johnson, assistant circuit attorney, in and for the city of St. Louis aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows:

"That Edward Carroll and Edward Gleason on the twenty-first day of December, in the year of our Lord, one thousand nine hundred and six, at the city of St. Louis aforesaid, with force and arms in and upon T. P. Hoxey, violently and feloniously did make an assault, and by force and violence to his person and by putting him in fear of immediate injury to his person, did then and there violently and feloniously attempt to rob, steal, take and carry away the money and personal property of him, the said T. P. Hoxey, from his person and in the presence and against his will with the intent then and there to permanently deprive the owner of the use thereof and to convert the same to their own use, and in such attempt did then and there violently and feloniously strike the said T. P. Hoxey with a billy and did then and there violently and feloniously with a pistol, loaded with gunpowder and leaden ball, shoot and wound the said T. P. Hoxey, in and upon the head and body of the said T. P. Hoxey, but did then and there fail in the accomplishment of such robbery, against the peace and dignity of the State.

"RICH. M. JOHNSON,

"Assistant Circuit Attorney.

"*State of Missouri, City of St. Louis, ss.*

"Richard M. Johnson being duly sworn, upon his oath, says that the statements made in the foregoing information are true.

"RICH. M. JOHNSON.

"Subscribed and sworn to before me this 21st day of January, 1907," etc.

To this information the defendants entered their pleas of not guilty, and on April 3, 1907, they were put upon their trial. The evidence upon the part of the State tended substantially to prove the following state of facts: That what is known as the Buss Mill was located at No. 7550 North Broadway, in the

city of St. Louis, Missouri, and that T. P. Hoxey was the manager and cashier of said mill and the person in charge of its property and money, and that in a small safe in the office of that mill, under the care and in his custody, on the 21st day of December, 1906, there was $440, the property of the J. B. Buss Mills.

Conrad Hart, aged about nineteen years, testified that for eight or ten years he had been acquainted with the defendants, who were about his age. He said that in the fall of 1906 he had been out in California with the defendant Gleason, and had talked several times with Gleason on the subject of robbing the Buss Mill, where Gleason told him there was lots of easy money for them to get when they returned to St. Louis. Early in December Hart returned to St. Louis and met the defendants, but nothing further was said about the suggested robbery until the day before the attempt was made, when Gleason asked Hart to go out to the Buss Mill, and said that the money was easy to get. The next morning Gleason met Hart again and arranged for a meeting between Hart, Gleason and defendant Carroll at a later hour that morning. Pursuant to appointment, Hart met the defendants about 10:30 a. m., each, according to arrangements, having brought with him his overcoat. None of them had any money and the overcoats were brought for the purpose of pawning them in order to raise money with which to buy revolvers and ammunition and carry out the plan of robbery. They visited several pawnshops and pawned the overcoats of Hart and Carroll, thereby raising seven dollars. Gleason kept his overcoat. With the money thus obtained they visited stores, and Hart and Carroll each bought a cheap revolver and some ammunition. About noon they ate and drank together and soon afterwards took a car on the way to the mill on North Broadway. Hart said that while on the way they talked over the plan

by which the robbery would be effected, Gleason, he said, doing most of the talking. The plan was to approach the mill on foot, Hart and Gleason to enter the office and Carroll to remain outside, to which Carroll agreed, and said that he would be outside while they went in, and if there was any fighting he would come running right over. The plan contemplated was that Gleason and Hart would enter the office, pretending to be employer and employee, and ask the use of the telephone, and, on the pretext of sending Hart for a fixture, they were to ask to have a two dollar bill changed, and thereby secure access to the money in the mill safe. About three blocks from the mill they left the car, and took a drink in a saloon, where they were seen by witness Joseph Conway. From the saloon they walked to the mill, Hart and Gleason walking on the east side of Broadway, on which side was the mill, and Carroll, according to plan, following on the west side of that street. Gleason was wearing his overcoat, and had with him for a weapon a billy, which was a short piece of leather with a knob and having a strap for wrapping around the hand.

The testimony of Hart, T. P. Hoxey and Pat O'Neill tended to prove that Hoxey and O'Neill were sitting in the office when Hart and Gleason entered. Gleason asked the privilege of using the telephone, which was in the office, and, being permitted to do so, he called up a plumbers' supply company and talked about a fixture, or piece of fitting, for which he was going to send, and, as he hung up the telephone, he turned to Hart and asked whether Hart had money for the car fare. Hart replied that he had not, whereupon Gleason asked Hoxey if he could change a two-dollar bill. Hoxey, saying that he could do so, stepped to the safe, which was a small safe about three feet high sitting on the floor of the office, opened the safe and took from it the said money, of which he was in

charge as manager or agent for said J. B. Buss Mills, and was stepping over, making change with the money on top of the safe, when defendant Gleason struck him on the head with a billy. The blow blinded or stunned Hoxey for a moment, but he instantly turned and grappled with Gleason. Just as he did so, Hart, who, for the moment, had covered O'Neill with his revolver, pointed the revolver at Hoxey and fired a shot which hit Hoxey in the breast and inflicted a wound. Defendant Gleason, becoming released from Hoxey, ran out of the office, leaving his hat there, which had fallen from his head during the struggle. The two-dollar bill, which Gleason had requested Hoxey to change, also remained in the office. Out upon the street, Hart and Gleason met the defendant Carroll waiting, who, according to Hart, inquired if they got any money. All three ran rapidly away. As they ran, Gleason handed his overcoat, marked with his name on the inside pocket, to Carroll. Carroll carried the overcoat along with him and placed his revolver in its pocket. After running some distance, an officer came upon them and arrested Hart, but defendants got away. Carroll, in his flight, threw away Gleason's overcoat, which, with Carroll's revolver in the pocket thereof, the officer in pursuit secured. Defendants were successful for a time in making their escape, but about one month later they were apprehended and arrested in New Orleans. The billy and Carroll's revolver were introduced in evidence. The witness, Conrad Hart, at the time of the trial, had already pleaded guilty to a separate information charging him with attempted robbery on account of his participation in this adventure.

Defendants offered no evidence.

At the close of the case the court instructed the jury and the cause was submitted to them. It is not necessary to reproduce the instructions, as counsel for

appellants in their brief do not challenge the correctness of them. After due consideration of the cause the jury returned separate verdicts finding the defendants guilty, and assessing their punishment at imprisonment in the penitentiary for a term of six years. Timely motions for new trial and in arrest of judgment were filed by each of the defendants, which were by the court overruled. Sentence and judgment were entered in accordance with the verdict and from this judgment the defendants have prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

Learned counsel for appellants in their brief and argument present but two legal propositions for our consideration:

FIRST. It is insisted that the information is insufficient to support the judgment in this, that it fails to charge an intent to deprive the owner of the use thereof without his consent. In other words, it is contended that it was essential to the validity of this information that it charge an intent to deprive the owner of the use of his property without his consent.

SECOND. That the evidence fails to show to whom the money, alleged to be in the safe, belonged. We will give these propositions in the order named such attention as their importance merits:

## I.

In our opinion the information in this case is sufficient and there was no necessity for the use of the terms to which our attention has been directed by learned counsel for appellant, *"without his consent,"* in order to make the charge a valid one. This information properly charges every essential element nec-

essary to constitute the offense of which the defendants were convicted. The information, it will be observed, directly charged the acts of violence in the attempt to perpetrate a robbery of the prosecuting witness, and all of these acts were done against the will of the party upon whom the attempt was made. Certainly if it was against his will, it was without his consent, and we take it that it was not essential to use the terms, *without his consent.*

In State v. Lamb, 141 Mo. 298, the sufficiency of the indictment, which was one for robbery, was challenged by counsel for appellant, and it was expressly ruled by this court that the indictment was sufficient, and the information in the case at bar is substantially in the same form as in the Lamb case, with the exception that in the one case the charge was for robbery, and in the other attempted robbery; but so far as concerns the essential elements constituting the offense of robbery, an examination will demonstrate that the charge in the two cases is substantially the same.

To the same effect is the information in State v. Montgomery, 181 Mo. 19. The defendant in that case was convicted of robbery, and the judgment was affirmed. The information upon which the judgment was predicated, in charging the offense of robbery, employed substantially the same terms as embraced in the case at bar.

The information in this case is in perfect harmony with approved precedents. Neither the Lamb Case nor the Montgomery case, which were charges of robbery, employed the use of the terms *without his consent,* which counsel for appellants in the case at bar contend are essential to the validity of the information now being considered.

## II.

It is insisted by appellants that the evidence fails to show to whom the property belonged which was

attempted to be taken. We are unable to give our assent to this insistence. The information substantially charged that the defendants violently and feloniously attempted to rob, steal, take and carry away the money and personal property of him, the said T. P. Hoxey, and the testimony in this case, beyond any doubt, shows that T. P. Hoxey at the time of the attempted robbery was in the possession of the property. As against the robbers it was properly charged that T. P. Hoxey, who was in the lawful possession of the money and property, was the owner of it, and the mere fact that during the progress of the trial it appeared that T. P. Hoxey was in charge of the property for the J. B. Buss Mills, does not authorize the defendants to interpose the defense that the J. B. Buss Mills were the actual owners of the property, or the further defense that the information failed to allege, or that the proof failed to show, that they were either a partnership or a corporation. In the information there was an entire absence of any allegation that the J. B. Buss Mills had any connection with this property, and even if it be conceded that they were the actual owners of the property, yet if Mr. Hoxey was in the lawful possession of that property, the charge was manifestly proper that the defendants attempted to rob T. P. Hoxey of his money and property. We repeat, that as against the defendants T. P. Hoxey stood as the owner of that property, of which he was in the lawful possession.

In State v. Montgomery, supra, the authorities upon this proposition were exhaustively reviewed. In that case it appeared that one Mr. Radford was the real owner of the property but a man by the name of Mills was in the lawful possession of it, and the information charged the ownership of the property in Mills, and after a careful consideration and exhaustive review of all the authorities upon this proposition, the

court said, speaking through Judge GANTT, that "Mills, then, being lawfully in possession by virtue of his employment as clerk for Mr. Radford of the money in the cash register, had a sufficient ownership thereof as against the defendant to justify the laying of said money in him for the purposes of this prosecution against the defendant who robbed him of the same and a sufficient ownership to meet the requirement of the statute that said money should be laid as his. The information properly charged the robbery of Mills and laid the goods in him; otherwise, there can be no robbery in such circumstances."

Learned counsel for appellant direct our attention to the case of State v. Davis, 138 Mo. 107; State v. Horned, 178 Mo. 59; State v. Jones, 168 Mo. 398; State v. Kelley, 206 Mo. 685. An examination of those cases will demonstrate that they charged the ownership of the property in some company, either a mercantile company, or a railroad company. It was held that it was essential, if those companies were a partnership, to give the names of the partners, or if a corporation to so charge in the information or indictment. It is by no means ruled in those cases, and it is not even suggested, that if some individual was in possession of the property the ownership of it could not be laid in such person.

T. P. Hoxey was in the lawful possession of this property, and it was charged that he was the owner of such property, and the proof fully sustains the allegations of ownership. There is no pretense that the testimony in this case was insufficient to support the verdicts.

We have given expression to our views upon the only propositions urged by counsel for appellants, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.