STATE of Missouri, Respondent,

v.

Alan Daniel WILWORDING, alias Daniel
Allen Wilwerding, Appellant.

No. 51048.

Supreme Court of Missouri,

Division No. 2.

Oct. 11, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Henry S. Stolar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Alan Daniel Wilwording and Daniel Allen Wilwerding, pro se.

William A. Moon, Court Appointed Attorney, Springfield, for appellant.

EAGER, Presiding Judge.

Defendant was charged by information with first degree robbery committed by means of a dangerous and deadly weapon and also with a prior conviction. He was found guilty by a jury and sentenced by the court to be imprisoned for a term of twenty years. Motion for new trial was filed and overruled. Defendant was given leave by this court to file a notice of appeal out of time, and he was permitted by the trial court to procure a transcript in forma pauperis. The case has been briefed here by counsel. Since there is no contention that the evidence was insufficient to sustain a conviction, we shall not make a detailed statement.

Shortly before nine o'clock on the evening of July 13, 1963, the So-Lo Market in Springfield was robbed by two men; one went to a check-out stand, held an automatic pistol on the checker or cashier, announced that it was a holdup, and had the checker put all the bills from the cash register into a paper bag, which he then took. The other man went to the small office where one William James Wilkinson, President and General Manager of So-Lo Markets, Incorporated, was counting the receipts of the day, pointed a pistol at him and had him put the loose currency in a bag. The man who had robbed the checker then came to the office and got Wilkinson, and at gunpoint had him clean out another cash register and then the office safe. No resistance was made in the face of the two pistols. The total money taken was well over $5,000.

The defendant was positively identified at the trial as the robber at the check-out station by William Wilkinson, by the check-out boy, by Guy Wilkinson (manager of the local store) who happened to come into the store just at the time of the robbery, and by two customers who were near the check-out station. Four of these witnesses had also identified defendant from groups of four or five men in the police lineup; three had identified him again in the detectives' room at police headquarters under different lighting. There were certain more or less minor discrepancies in the descriptions of sunglasses worn by the defendant, and perhaps in other particulars. A Springfield barber, who was present at the check-out counter, testified that, in his opinion, the defendant was not the man who held up the check-out boy; he arrived at that conclusion largely on account of the appearance of defendant's hair. The defendant's father, who lived in Kansas City at the time of the robbery, testified that the defendant came to his trailer home for a few minutes at about 11:00 p. m. on the night of July 13, 1963; also, that about a month earlier he had given his son $1,000 to get him started in a business. One Eula Dulin, who was with the father at the time, also corroborated his testimony concerning the brief visit of the son. Ronald Kennedy, then serving a twenty year sentence in the Missouri penitentiary for the same robbery and with admitted prior convictions, was brought to the trial on a writ of habeas corpus testificandum; he testified that the defendant Wilwording had nothing to do with the robbery and he named a supposed person whom he said had participated in it with him. Defendant was arrested on July 20, 1963, practically on the Missouri-Kansas state line, by a Prairie Village, Kansas, patrolman who had a pick-up order for the car in which he was riding; the pick-up order was on a different charge or complaint. When the car was stopped, the men were taken out and the officer was in the process of searching the driver at the patrol car when Wilwording, the passenger, jumped back into his car and drove north on State Line Road at 80-90 miles an hour in heavy traffic, with the officer following in the patrol

car. After defendant had struck three other cars, and after the firing of three or four shots by the officer which deflated one or more tires, defendant's car was sufficiently damaged that he was forced to stop. He was then arrested, but only after another brief attempt to flee. Ten twenty dollar bills were found on his person. Brief rebuttal testimony was produced by the State; this tended to reflect discredit upon the testimony of Kennedy, but it is unnecessary to detail it here, as the fact issue in the case was very simple. Any further facts which may be necessary will be developed in the body of the opinion.

The first point made in defendant's brief is that the court erred in permitting the State, over objection, to produce evidence of a prior conviction "after the submission of the case to the jury." That evidence was presented at a time when the jury had recessed for lunch; two witnesses for the State, customers of the store, had testified identifying the defendant. Four witnesses for the State on the merits followed thereafter. The evidence thus complained of consisted of: a certified transcript of a judgment and sentence of the Circuit Court of Jackson County, entered after a plea of guilty to the offense of stealing from the person, with a sentence of two years at the Algoa Reformatory; a transcript of the record of the Department of Corrections showing defendant's incarceration and discharge on three-fourths time; and the testimony of a Springfield detective that the defendant had stated to him that he had served thirteen months in the Missouri penitentiary, ending June 1, 1963 (which date conformed to the discharge date of record). Counsel for defendant objected at the time for the reasons that "the trial has already started and the jury has been sworn," that opening statements had been made, and a "portion" of the State's witnesses had testified. Counsel further stated: "I didn't know this was going to occur. We haven't had the opportunity to have the advantage of cross examination of the state's witness before this defendant.

That makes a lot of difference in the way you cross examine witnesses as to whether or not the Judge or the jury is going to pass the sentence." A formal objection to the record of the Department of Corrections has not been preserved in defendant's brief and is waived. At the conclusion of this hearing the court found that the defendant had previously been convicted of a previous crime and that he was sentenced and confined therefor.

Our Second Offense Statute, Section 556.280 RSMo 1959 (Laws 1959), V. A.M.S., provides that the hearing shall be held by the judge "out of the hearing of the jury prior to the submission of the case to the jury * * *." Counsel here argues that the case was *submitted* when the jury was sworn. The authorities cited are wholly inapplicable. They consist of 16 C.J., Criminal Law, §§ 390–391 (1st Ed.), and the Georgia case of Fortson v. State, 13 Ga.App. 681, 79 S.E. 746. Both are concerned only with the time or stage of a prosecution at which a nolle prosequi may be entered without the consent of the accused. The Corpus Juris text indicates that after a jury has been impaneled and sworn, the accused's *jeopardy* has begun and that, generally, such action may not then be taken. The Georgia case, construing a Georgia statute providing that a nolle prosequi may be entered "at any time before the case has been submitted to the jury," holds that "within the meaning of this section" a submission does not occur until the jury has been impaneled and sworn. Such statements are in accord with the general rule on *jeopardy*; they have no relation whatever to the general meaning of a "submission to the jury" for the purpose of a finding on guilt or innocence or the fixing of punishment, or both. The "submission" from a standpoint of jeopardy means: "The danger of conviction and punishment which the defendant in a criminal action incurs when a valid indictment has been found, and a petit jury has been impaneled and sworn to try the case and give a verdict in a court of competent ju-

risdiction." (Citing cases.) Black's Law Dictionary, 4th Ed. The "submission" of a case under § 556.280 means, as we now hold, that time when a case is turned over to the jury for its decision under the instructions of the court. See, by way of analogy, State ex rel. News Corp. v. Smith, Banc, 353 Mo. 845, 184 S.W.2d 598. It is then, and only then, that the issues are submitted and the jury is told that it shall decide either guilt or innocence and punishment, or that it shall merely decide guilt or innocence. The real purpose and intent of our present Second Offender Act, as contrasted with the previous Habitual Criminal Act, is to keep the matter of prior convictions *away from the jury* by having the judge assess the penalty if, in fact, a prior conviction has been found. State v. Morton, Mo., 338 S.W.2d 858. All that is necessary is a hearing and a finding before the jury actually receives the instructions and *thus* receives the case for its final decision. In our practice such hearings have been held at various times prior to the giving of the instructions. State v. Griffin, Mo., 339 S.W.2d 803, certiorari denied 366 U.S. 938, 81 S.Ct. 1666, 6 L.Ed.2d 849; State v. Donnell, Mo., 351 S.W.2d 775, certiorari denied 374 U.S. 811, 83 S.Ct. 1703, 10 L.Ed.2d 1035.

■ Counsel argues that he was entitled to know in advance of the voir dire and any testimony whether the State was going to proceed on the information charging a prior offense; he says that this might have affected defendant's desire to plead guilty, as well as the voir dire examination and the cross-examination of witnesses. There are two complete answers to this contention. (1) The charge was plainly contained in the original information, which had never been amended, nor had the charge been withdrawn; both defendant and his counsel were on notice that it would be enforced. (2) The procedure followed complied strictly with our statute and neither defendant nor his counsel was entitled to anything more. The statute was not enacted for the purpose of giving a defendant any tactical advantage or disadvantage in the

examination of the jury panel or in the cross-examination of witnesses. Its terms were complied with here, and that is sufficient.

■ Defendant's next point is that the court erred in giving Instruction No. 3, the State's only instruction on the merits, which submitted the offense of first degree robbery by means of a dangerous and deadly weapon. We shall not need to quote the instruction. The first suggestion is that the State had waived the death penalty prior to the voir dire and that it thereby reduced the charge to robbery in the "second degree." In that connection the prosecutor stated that the State would not ask for the death penalty "to avoid qualification of thirty jurors instead of twenty-four." This did not constitute a reduction of the charge, and the offense would still be and was subject to punishment by imprisonment for any term up to life. Counsel cites one case, State v. Garrett, Mo., 282 S.W.2d 441; there the *charge* of first degree murder was expressly waived by the prosecutor and thus reduced to second degree murder. That case is in nowise applicable here. In our case there was no waiver, express or implied, of the first degree robbery charge; the State merely waived the extreme penalty for that charge. This it may do. State v. Redding, Mo., 357 S.W.2d 103, 108. Here, as in Redding, the defendant was still being tried for first degree robbery, with "a sentence of from five years to life." No point has been made either in the motion for new trial or in the brief regarding the number of jurors called on the panel. The defendant could not, in any event, have been prejudiced on the matter of punishment by this instruction, for that question was wholly withdrawn from the jury's consideration.

■ Next, counsel says that this instruction was not consistent with the information. The latter stated that defendant committed the robbery with intent to "deprive Bill Wilkerson, agent, servant and employee of So-Lo Market, Incorporated" of

the use of the money. The instruction submitted an intent to deprive the "So-Lo Market, Incorporated * * * of the use thereof * * *." Both the information and the instruction stated that the money stolen was the *property* of the So-Lo Market; and in both it was stated that Wilkerson was the agent, servant and employee of the So-Lo Market. Actually, both statements of the "intent to deprive" were surplusage, for under § 560.120, the felonious taking of the property of another from the person of "his agent in charge thereof," against the will of the agent by violence or by putting him in fear of immediate injury, is sufficient to constitute first degree robbery. Thus, the technical variance is of no substance whatever. Moreover, the jury could not help but know that the So-Lo Market was the one which was actually deprived of the money, and that such was defendant's intent. In McCarthy v. Eidson, Banc, Mo., 262 S.W.2d 52, it was held that an information charging first degree robbery was sufficient where it was alleged that the defendant feloniously robbed one Simmons of $30 belonging to one Petrie, even though it was not alleged that Simmons was the agent of Petrie; this, on the theory, that such a requirement was one merely of "description" and not one of limitation; that an inference of agency was properly drawn, and that defendant was fully informed of the nature of the charge. The court there said (quoting) at loc. cit. 53: "'The rule that nothing in an indictment must be left to intendment or implication refers to such necessary allegations as will inform the defendant of the nature of the charge. * * *'" The omission there was certainly one more *meaningful* than the presence of the purely technical variance here.

■ It is also argued that the omission from the instruction of the statutory words "in charge thereof" (immediately following the words "from the person of his wife, servant, clerk or agent,") as applied to Wilkinson,[1] rendered the instruction er-

roneous. The reasoning in McCarthy, supra, is sufficient to answer this contention. If Wilkinson was the agent of the So-Lo Market, if the money was its property, and if it was taken from Wilkinson in the store, there is an almost *necessary* inference that he was "in charge" of it, or at least was one of those in charge of it. The allegation was not such an essential part of either the information or the instruction that its omission would be fatal,—nor would its absence in anywise prejudice the defendant. The evidence was uncontroverted that Wilkinson was the President and General Manager of the chain of stores. The facts specifically hypothesized in the instruction fairly required a finding that Wilkinson was at least one of those in lawful possession of the money, and that was sufficient. State v. Carroll, 214 Mo. 392, 113 S.W. 1051, 21 L.R.A.,N.S., 311.

■ It is next urged that defendant was prevented from having a fair trial in that he was embarrassed by being brought into court and into the presence of the prospective jurors dressed in dirty and ragged clothes; that defendant told the court that he had asked for his own good clothes; that court was then recessed and defendant was sent back with the deputy to get (and did get) his appropriate clothing, and the trial proceeded. It seems that this occurred after it was first noted by the court that defendant was not present when the case was called for trial. Counsel states that he was out of the courtroom at the time, but he also states (brief, p. 2) that he came into the courtroom and "was advised by the defendant that they would not give him his clothes." Statements in the motion for new trial and in the brief are not self-proving. We look to the transcript for the facts. It is shown that the court noted that the defendant was not present, that he inquired of the bailiff, who went to check with the chief deputy sheriff and that the latter brought the defendant in; defendant immediately asked if he might say some-

---

1. The transcript of the evidence indicates that this is the correct spelling of the name.

thing to the court and the court said: "Let's go into chambers. Bring him into the chambers." Then there ensued a conversation about defendant's clothes, and the fact that "they" could not find them; the chief deputy stated that the clothes were in the property room, and that defendant had said nothing about "going to court at 9 o'clock." The court instructed the deputy to take defendant back and let him get into proper clothes, and he declared a recess. Thereupon the following occurred: "The defendant: Could I see my attorney? The Court: Call Mr. Moon. The Defendant: (Seeing his attorney:) They won't give me my clothes. Deputy Spencer: We just couldn't find them, Bill. (Whereupon the defendant left the courtroom.)" It is not possible from this record to tell just how much of this occurred in the presence of the jury panel or how defendant was dressed. His counsel was present during at least a part of the foregoing colloquy and certainly long enough to have seen defendant in court, dressed as he was; if any point was to be made of the occurrence, the question should have been raised promptly, either by motion to discharge the panel or otherwise. It is intimated in the brief that the "sheriff's office" intentionally tried to prejudice the defendant in the eyes of the jury. There is absolutely nothing in the record to sustain such a charge, and the occurrence fairly appears to have resulted merely from a misunderstanding. The court remedied the situation promptly, and it is not, in fact, charged with any error. We fail to see how any ordinary jury would be prejudiced because it had seen a defendant in old clothes, or torn clothes, or even soiled clothes, for this would only indicate to an ordinary mind that he had been *working* at some assigned duties in the jail. Work is no disgrace, even to a prisoner, we hope. No error is shown, no unfairness of the trial is shown, and no prejudice is shown. And when the question was raised on motion for new trial, it was the province of the trial court to exercise a broad discretion in the matter, this being a part of the general conduct of the trial. State v. Pink-

ston, Mo., 333 S.W.2d 63; Martin v. Sloan, Mo., 377 S.W.2d 252; State v. Turner, Mo., 320 S.W.2d 579. The point is denied.

One point is included in the brief without argument "for the reason it was raised by the Appellant in his motion for special order to file notice of appeal under Rule 28.07 of this Court." The point is that an "amendment" of the information to include the "Habitual Criminal Act" denied defendant due process and equal protection under the United States Constitution. There was no amendment of the information. We have held so many times that the enforcement of our Habitual Criminal or Second Offender Statutes is not such a violation, that it would be useless to discuss the matter again. See: State v. Morton, Mo., 338 S.W.2d 858; State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327; State v. Colbert, Mo., 344 S.W.2d 115, certiorari denied 369 U.S. 822, 82 S.Ct. 835, 7 L.Ed.2d 787; State v. Wolfe, Banc, Mo., 343 S.W.2d 10, certiorari denied 366 U.S. 953, 81 S.Ct. 1912, 6 L.Ed.2d 1246, certiorari denied 368 U.S. 907, 82 S.Ct. 188, 7 L.Ed.2d 101; State v. Thompson, Mo., 299 S.W.2d 468; State v. Donnell, Mo., 351 S.W.2d 775, certiorari denied 374 U.S. 811, 83 S.Ct. 1703, 10 L.Ed.2d 1035. And, if it were necessary, we would hold that any such objection should and must have been raised at or prior to the trial. Here it was not even raised in the motion for a new trial.

The last point made is that the verdict was insufficient since it did not refer to the information nor did the jury find the essential elements of the crime. The point is not developed. This, however, is a matter upon which we would be required to rule under Rule 28.02. The verdict was as follows: "We, the Jury, find the defendant, Alan Daniel Wilwording, alias Daniel Allen Wilwerding, guilty, as charged in the information, of robbery in the first degree." Obviously, the verdict *did* refer to the information. Counsel makes here a passing reference to his Point

II, in which he contended that the information and Instruction No. 3 were inconsistent. Possibly, he means here that the verdict was insufficient because it referred to an insufficient information. In our previous discussion we have indicated that the information was sufficient and we now so hold; also, there was no material variance or inconsistency between it and the principal instruction. We shall not discuss all that again.

Since the verdict incorporated the reference to the information, it was not necessary for the jury to make special findings of the essential elements of the crime. State v. Saussele, Mo., 265 S.W.2d 290; State v. Roberts, Mo., 232 S.W.2d 975; State v. Staab, Mo., 223 S.W.2d 496; State v. Sheard, Mo., 276 S.W.2d 196. The verdict was certainly sufficiently definite to constitute a bar to another prosecution. Verdicts like the present one have been universally upheld. Defendant cites the case of State v. Cacioppo, Mo.App., 373 S.W.2d 479, where the prosecution was one for receiving stolen goods. The court held that because the verdict omitted the phrase "as charged in the indictment," and, on the other hand, made no findings on certain factual essentials of a special verdict (knowledge and intent to defraud), it was insufficient. There the court quoted from Saussele, supra at loc. cit. 482, as follows: " 'Of course, a verdict that *does not refer to the indictment* in its description of the offense, of which it finds the defendant guilty, must be responsive to the charge made by the indictment and certain as to the offense intended; *or, as the cases say, a verdict must contain either in itself or by reference to the indictment all of the essentials of the crime*. See State v. DeWitt, supra, 186 Mo. [61], loc. cit. 69, 84 S. W. 956.' " (Emphasis by the Court of Appeals.) It is thus obvious that the cited case merely confirms what we have just

said about the sufficiency of the present verdict. The point is denied.

The defendant has filed, pro se, a "Supplemental Brief in Reply." We have considered it in its entirety. Much of it consists of additional argument to the effect that he was deprived of a fair trial because the trial court failed to hold its hearing under the Second Offender Act prior to the voir dire, and also a reargument of the meaning of "submission" under the statute. We have discussed this matter fully and nothing is to be gained by repetition. We are entirely satisfied that the statute was not violated. The additional argument that the charge of a prior offense was introduced for the first time in the circuit court by information (and not in the magistrate court) and that defendant was thus misled, really requires no discussion. The first formal charge in a felony case is made in the circuit court, after a finding of probable cause by the magistrate. The allegation of a prior offense goes merely to the matter of punishment and the magistrate has nothing whatever to do with it. Defendant further states that his counsel could not waive his substantial rights by a failure to object,—this in connection with his appearance in allegedly improper clothes, and in connection with the size of the jury panel. On the latter, there is still no point or objection, even now, and the question is not in the case. On the former we have held that no prejudice has been demonstrated and no unfairness created, which would be equally true even if a proper objection or motion had been made.

We find no prejudicial error in any other parts of those matters which we consider under Rule 28.02 without specific assignment. The judgment will be and is affirmed.

All of the Judges concur.