STATE of Missouri, Respondent,

v.

Robert D. GRAY, Appellant.

No. 52984.

Supreme Court of Missouri,
Division No. 2.

Feb. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Lawrence F. Gepford, Asst. Atty. Gen., Kansas City, for respondent.

Lewis F. Randolph, Jr., St. Joseph, for appellant.

PRITCHARD, Commissioner.

Appellant was convicted of the crime of forcible rape by the verdict of the jury under § 559.260.* Having been found to be a second offender under § 556.280 he was sentenced by the court to five years' imprisonment in the Department of Corrections. On this appeal, among other points, he challenges the submissibility to the jury of the state's case against him.

The victim and prosecuting witness was Sharon Yvonne Huffman, age 27, who lived with her parents and three sisters. On January 7, 1966, she worked as a receptionist and switchboard operator for the Y.M. C.A. in St. Joseph, Missouri. On Tuesday, January 21, 1966, she met appellant when he came to the "Y" for a room, which was provided him. From that time until Sharon went out with him appellant came to the desk about every night, and on one occasion he brought her a bottle of Pepsi Cola. He then asked her for a date on Wednesday night, June 29, 1966, and the initial arrangement was that he was to pick her up at 8 p. m. after she attended church. Sharon on that evening drove her car to the church, but did not attend. She talked with a girl friend and then met appellant at the church, leaving her car for her mother

* All statutory references are to RSMo 1959, V.A.M.S., unless otherwise noted.

to pick up. Defendant had a 1964 Buick car, two-door hardtop.

Sharon was dressed in hose, pants and girdle, half slip, bra, a two-piece cotton suit, and flats. Appellant had on slacks and a sport shirt. The evening was warm and the windows on appellant's car were down at all times. The couple did not attend a movie as planned because appellant had only $1.96, and Sharon told him when he asked that she had no money. Instead, they went to Bodde's Bar and Lounge, that being Sharon's idea because she had been there before for dancing. They arrived at Bodde's about 8:30 p. m., where they danced about every time the music came from the juke box. During the time they were at Bodde's, Sharon had two Tom Collins drinks and appellant had a beer.

When they left Bodde's about 10:30 p. m., appellant drove down the highway to Shockey Dodge car lot where he worked part time selling cars. That place was closed for business, but was lighted with a string of bulbs across the front and with a flood light on the office building. There was only one entrance driveway onto and from the car lot, and appellant pulled up thereon to the office building and backed his car in beside a truck on the second row of cars. He had told Sharon he wanted to show her some of the cars he sold. Immediately to the east of the lot was a vacant house; there were no lights on in the house on the west side of the lot, and to the south was open or vacant land. There were no lights over the row of cars in which appellant was parked.

Appellant offered to help Sharon unfasten her seat belt, but she did it herself. They did not get out to look at cars. Appellant then reached over and kissed Sharon who told him that she preferred that he did not kiss her on a first date because she did not believe in being that friendly at that time. Appellant paid no attention to her and kissed her again; she did not kiss him back. He then pulled her down on the front seat with her head on the driver's side underneath the steering wheel. He yanked off her girdle with hose still attached, and her pants—her undergarments. He pulled up her skirt. She attempted more than once to get up from the front seat and he would push her down by her shoulders into the seat. Appellant said to Sharon: "Stop fighting so hard, damn it, or I will have to hurt you"; and "You better be good to me, baby. Be good to me, baby. Be good to me, baby." While she was lying in the front seat Sharon reached her hand back and tried to open the door on the driver's side. When she put her hand on the door appellant hit her hand off it and said, "Get your hand off the door, damn it."

Prior to these events appellant had been a gentleman. Sharon asked him, begged him, not to do it, "Please don't do it," and he would not listen to her. She was pleading with him in a voice which could be heard by anyone in the lot. Prior to that evening Sharon had never had sexual intercourse with a man, and she told appellant that, and that he was then hurting her, and to stop. After the act had been completed, Sharon told appellant she had to go to the rest room and asked him to take her somewhere. He told her to go behind the car. She wanted to put on her clothes and appellant would not then let her out of the car. When she started to get out he told her not to open the door on that side as the dome light would come on. He told her he would open the door on the passenger's side and hold the (dome light) button down. She then went behind the car and put her garments back on. Afterward, she got back into the car and asked appellant to take her home. He said it was early and that she didn't need to go home yet, and suggested that they sit there and talk some more about going out the next week. They remained there for about one-half hour talking about the future date, then appellant took her home. Sharon did not keep the future date with appellant, and did not intend to—she told him she would go

out with him just to make sure she got home all right.

Accompanied by her girl friend and her father, Sharon reported the incident to the police the evening following (Thursday). She then saw her physician, Dr. Benson, the next day, Friday, and he examined her and she went back to him three times.

On cross-examination Sharon testified that at the time of the occurrence the car windows were down. She did not scream real loud for help, and she did not kick, hit or scratch appellant, or tear any of his clothes. Other than knocking her hand off the door, appellant did not strike her, scratch her, choke her, or threaten her or any member of her family with a weapon. When she was taken home, appellant kissed her in the car, then walked her part way up the steps of her home. It was necessary that she pass through her parents' bedroom, they being awake, to reach her bedroom, and she did not tell them (then) that she had been raped. (Sharon's testimony here varies as to when she told her mother of the incident—that night, as she testified on redirect examination, or at noon the next day after she had talked with her girl friend, June.) Sharon went in her room and got ready for bed. The next day she went directly to the Y.M.C.A., and worked from ten until six o'clock.

On redirect examination Sharon testified that the reason she did not fight appellant was that she was afraid he would do something to her because he told her if she didn't stop fighting him he would have to hurt her.

Dr. Benson testified he saw Sharon on July 1, 1966, and his pelvic examination showed the hymen was apparently torn in a couple of places; the perineum had several little tear marks in it, and the vagina was red as though it had been irritated. Apparently this was the first occasion that Sharon had of intercourse. He found no sperm and there was negligible bacteria. Sharon was upset at the time he first examined her. Appellant, by counsel, admitted at trial that he did have sexual intercourse with Sharon on June 29.

Upon his contention that the trial court erred in overruling his Motion for Judgment of Acquittal at the close of the evidence, appellant says, "A. The State failed to prove Prosecutrix made the utmost resistance of which she was capable and manifested the utmost reluctance to the sexual intercourse." Under the facts and circumstances here, that Sharon was taken to an apparently deserted car lot, that appellant yanked off her undergarments, that he threatened to hurt her if she did not stop fighting, that he pushed her down repeatedly in the seat of the car, and that he struck her hand when she tried to open the car door, there was a sufficiency of evidence for the jury to find that appellant's acts constituted forcible rape, and that Sharon, being afraid that appellant would hurt her, did everything within her power to prevent appellant from accomplishing his purpose. There was evidence of threats of personal violence here which distinguishes appellant's cited case of State v. Amsden, Mo., 299 S.W.2d 498, 503, where that hypothesis in a given instruction was not only not supported by the evidence but directly contrary thereto. In State v. Beck, Mo., 368 S.W.2d 490, 493 [3], it was said, "This court stated long ago that 'the "utmost resistance" doctrine does not apply where the woman is put in fear of personal violence, and her will thus overcome * *. "A consent induced by fear of personal violence is not consent; and though a man lay no hands on a woman, yet if, by an array of physical force, he so overpowers her mind that she does not resist, he is guilty of rape by having unlawful intercourse." (Citing authority and cases).'" Whether Sharon voluntarily submitted to appellant or whether she made the utmost resistance and manifested the utmost reluctance to have sexual intercourse were jury issues under the aforesaid facts and circumstances. The further contention that "B. The State failed to prove threats of

force and violence from which the Prosecutrix could have apprehended fear of death or great bodily injury" is answered by the Beck case, supra, and the evidence of threats, pleading and fear testified to by Sharon justifies the submission of the issue of forcible rape to the jury, i. e., an array of physical force so that he overpowered her mind.

■ The information here follows the language of said § 559.260 in that it alleges appellant did unlawfully, feloniously and forcibly ravish and carnally know Sharon against her will. That allegation disposes of appellant's last contention that "C. The information herein filed did not charge threats of force or violence." Instruction No. 6, submitting the fact of threats of force and violence to the jury, follows State v. Beck, supra, and negatives the defense of consent, and allows the finding that the act was *against her will*. See State v. Lee, 288 Mo. 41, 231 S.W. 619, 621 [1]; State v. Holman, 230 Mo. 653, 132 S.W. 695, 696. The evidence here is not contradictory in nature or unbelievable, so as to require the corroboration of Sharon's version of the incident within appellant's cited case of State v. Burton, 355 Mo. 467, 196 S.W.2d 621, which case holds further that a case of rape may be made upon the uncorroborated evidence of the prosecutrix *unless* such evidence is contradictory in nature or leaves the mind of the court clouded with doubt. Appellant says that the case should be reversed and that he should be discharged considering Sharon's cross-examination testimony that the reason she instituted this matter was that she did not want to be bothered with appellant any more. That suggestion is without merit as it goes merely to the credibility of direct testimony concerning threats of bodily harm as that and all other evidence bears upon the issue of consent. Appellant's Point IV, raising the issue of the sufficiency of the state's evidence, is overruled.

■ Appellant says the following voir dire question put to the jury panel improperly sought to cause the jury to speculate as to their acts in the event of certain contingencies (it is argued that it attempted to commit the jurors before they had heard the evidence, instructions of court or argument of counsel):

"This case being tried is a criminal case. The burden is upon the state to prove to each and every one of you if selected to serve on the jury panel beyond a reasonable doubt that defendant, Mr. Gray, did in fact commit the charge that we have filed against him assuming that the state from the evidence has shown beyond a reasonable doubt that Mr. Gray did commit the alleged act, are there any of you here, based upon this assumption, who could not return a verdict of guilty?"

The question is not analogous to the reversibly erroneous question put to the jury panel in State v. Katz Drug Company, Mo., 352 S.W.2d 678, 684 [4]. In that case the question contained particular facts by way of hypothesis: that [if I prove] the defendant "sold goods, wares and merchandise which were not medicines or drugs and not items of immediate necessity, and if the Court instructs you that it is a violation of the law, *will you* convict?" (Emphasis added.) It was held that this was an improper attempt to commit jurors before they had heard the evidence, and the cases of State v. Heickert, Mo., 217 S.W.2d 561, 562, State v. Pinkston, 336 Mo. 614, 79 S.W.2d 1046, State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949, and State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 694, were cited as exemplifying the type of condemned questions which would commit jurors to a verdict prior to the submission of evidence. Here the question hypothesizes no particular facts; it is based on an assumption of proof of a charge; and, in final analysis, it is merely an attempt to determine if the jury panel had any moral scruples against re-

turning a verdict of guilty, not one attempting to commit the jurors in advance of hearing any evidence, arguments of counsel or instructions of the court. Compare State v. Wolfe, Mo., 343 S.W.2d 10, cert. den. 81 S.Ct. 1912, 366 U.S. 953, 6 L.Ed.2d 1246, cert. den. 82 S.Ct. 188, 368 U.S. 907, 7 L.Ed.2d 101, where, while it was held that a refusal to permit defendant to ask *each* prospective juror how he would vote under certain circumstances was not an improper exercise of discretion, yet that ruling saved to defendant the right to ask the whole panel if they would acquit if the state failed to prove the charge beyond a reasonable doubt. Point I is overruled.

Appellant claims that the court erred in submitting this case to the jury under the second offender act. Reasons assigned are that the evidence thereof was received at a time prior to the jury being sworn and prior to the time appellant was placed in jeopardy on the offense charged; the court took judicial notice of State's Exhibit 1 (documentary proof of previous conviction, sentence and commitment); and in admitting State's Exhibit 1 into evidence and in failing to require an authenticated or certified copy of court records where appellant was allegedly convicted of a prior offense; and assuming from State's Exhibit 1 and statements of counsel for the state that the alleged Indiana conviction was for a crime which would have been a felony in this state.

Section 556.280 (as amended Laws 1959, S.B. No. 117, § 1) provides that "[i]f any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor, and is charged with having thereafter committed a felony * * *," the trial judge shall determine the punishment for the subsequent offense, hearing and determining the evidence outside the hearing of jury prior to the submission of the

case to it, and the court shall enter its findings thereon. If the finding is against the prior conviction, the jury shall determine guilt and punishment as in other cases.

Appellant was charged with the prior alleged felony of theft, and that he was convicted therefor and sentenced to a term of not less than one year nor more than ten years to the Indiana State Reformatory at Pendleton, Indiana, and was ordered to pay a fine of $50.00 and $35.60 costs.

The second offender act requires only that the trial judge determine its applicability *prior* to the submission of the case to the jury. State v. Wilwording, Mo., 394 S.W.2d 383. Here, the jury panel was sworn before voir dire examinations, and it is fairly inferable that the determination of appellant's prior conviction in Indiana was made before the twelve veniremen were sworn to try the case. It has been held that this statute is procedural, State v. Adamson, Mo., 346 S.W.2d 85, and the proceedings thereunder do not place the accused twice in jeopardy, State v. Johnstone, Mo., 335 S.W.2d 199. Appellant suggests no prejudice to him by reason of the fact that the hearing and determination of the applicability of the second offender act occurred prior to the time when the jury which was to hear the case was sworn. His contention in this respect is overruled.

■ It does not appear that the court took judicial notice of State's Exhibit 1. It was offered in evidence by the state and if properly authenticated is admissible under § 490.220. (§ 490.130 refers to court records, and is not applicable to the present proof as contended by appellant.) State's Exhibit 1 is duly attested by Harold J. Anderson, Judge Pro Tem of the Madison County Circuit Court, who further certifies that Robert J. Duncan is the legal keeper and the officer having the legal custody of the original records of the Indiana Reformatory; and it is certified to by its clerk. It is signed by Robert J. Duncan, Senior Parole Officer of the Indiana Re-

formatory (that institution's seal being also affixed), and Duncan certifies that he has the legal custody of the original files and records of persons committed to said penal institution and that the attached photograph, fingerprint record and commitment are copies of the "original records of Register Number 46673 Robert Dale Gray a person heretofore committed to said penal institution and who served a term of imprisonment therein." These certificates of the record exemplifications of the public office (Indiana Reformatory) of our sister state, Indiana, being attested by the keeper of such records and bearing his seal, are in due form and cause the documents to be admissible in evidence as proof of a prior conviction and sentence thereon. State v. Hagerman, Mo., 244 S.W.2d 49, 54 (in which the recitals of the certificate are practically identical to those here), held that a prison record was sufficiently authenticated and shown to be the record of a public office where the exhibit was certified to by the " 'Warden of the State Penitentiary of Arkansas' " and recited that he was " 'the keeper of the records and office books kept in the office of Warden of the State Penitentiary of Arkansas, the same being a public office not appertaining to a court.' " In State v. Young, Mo., 366 S.W.2d 386, and in the there cited case of State v. Hendrix, 331 Mo. 658, 56 S.W.2d 76, there were no recitals in the documents offered to prove previous convictions that the attester was the legal custodian or keeper of the public records. State v. King, 365 Mo. 48, 275 S.W.2d 310, involved an attempted proof of prior convictions by an offer of minutes or memoranda of the St. Louis Court of Criminal Corrections, and no certified copies of the court's judgments were offered. In 32 C.J.S. Evidence § 664, p. 867, it is said, "It has been held that the recital in a certificate to a copy of a document as to the official character of the officer as the legal custodian of it is prima facie proof of that fact, and that it is unnecessary to call witnesses to prove the identity of the custodian or his signature."

Under State v. Hagerman, supra, in the ruling of which this case squarely falls, there was a sufficient authentication or certification of State's Exhibit 1.

■ The contention is made that the state failed to prove that appellant's alleged conviction of a crime in the state of Indiana would amount to a felony in this state so as to make the second offender act, § 556.280, applicable. § 556.290 provides, "Every person who shall have been convicted in any of the United States * * * of an offense which,¹ if committed in this state, would be punishable by the laws of this state by imprisonment in the penitentiary * * *" shall be punishable as a second offender under § 556.280. "Felony" is construed by § 556.020 to mean any offense where one convicted thereof shall be liable by law to be punished with death or imprisonment in the penitentiary. § 556.040 defines "misdemeanor" as an offense punishable only by fine or imprisonment in the county jail, or both. State's Exhibit 1, with a copy of the commitment order attached, recites that appellant "is guilty of the crime charged, namely: Theft. It is by the Court, therefore, ordered and adjudged that the said defendant for the offense by him committed, to make his fine to the State of Indiana in the penal sum of $50.00 Dollars, that he be committed to the custody of the Board of Trustees of the Indiana Reformatory to be confined by them according to law for a period of not less than One (1) years nor more than Ten (10) years, and that _____ pay and satisfy the costs and charges herein, taxed at $35.60. The Sheriff of said Lake County is hereby charged with the due execution of the foregoing judgment. (Signed) John H. McKenna, Judge." This commitment order is dated March 10, 1964. In Acts 1963 (Spec. Sess.) Indiana amended its larceny statutes by enactment of a comprehensive series on that subject. § 10–3030, Burns Indiana Statutes, Annotated [Acts 1963 (Spec. Sess.), ch. 10, § 3, p. 10], defines the various acts of theft. § 10–3039 of the Indiana Statutes [Acts 1963 (Spec.Sess.)] enumer-

ates the penalties for the various acts of theft. Paragraph (1) thereof provides in part that if a person is convicted of theft of property not from the person of *less* than $100 shall be fined not more than $500 or imprisoned in the state prison for not more than one year, or both; or such person may be imprisoned in the state prison not less than one year nor more than five years, and fined in a sum not exceeding $500. Paragraph (3) of the penalty statute of Indiana, supra, provides: "A person convicted of theft of property of one hundred dollars [$100] or more in value shall be fined in any sum not exceeding five thousand dollars [$5,000] or imprisoned for not less than one [1] year nor more than ten [10] years, or both, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period." It follows that since appellant was sentenced by Judge McKenna to imprisonment in the Indiana Reformatory from one to ten years that he was found guilty of theft of more than $100 under said Paragraph (3), and that the same would be a felony under Missouri's penalty statute for stealing and punishable by imprisonment in the penitentiary, § 560.161, subd. 1(2), for not more than ten years nor less than two years if the value of the property is at least fifty dollars. There is no merit in appellant's contention that his Indiana conviction for theft would not be a felony in this state. Point II is overruled.

 Instruction No. 11 was given by the court as to verdict forms. Because no mention was made of the punishment, but only guilt was left to the jury, appellant says error was committed in that the former issue was withdrawn. Appellant was a second offender, and the matter of his punishment was for the court under § 556.280, and the jury had no concern therewith. It is proper, in such case, that the jury not be instructed as to punishment. State v. Hill, Mo., 371 S.W.2d 278. Point III is overruled.

 By Point V appellant attacks Instruction No. 6 upon the asserted ground that it failed to require a direct finding that the intercourse was without the consent of the prosecutrix. Paragraph 2 of this instruction told the jury that before it could find appellant guilty of rape it must find beyond a reasonable doubt that he forcibly assaulted and had sexual intercourse with Sharon *against her will*. Cited is State v. Egner, 317 Mo. 457, 296 S.W. 145, where it was held that it was prejudicial error to fail to instruct upon the constituent element of lack of consent of the victim of rape. The refused instruction there was not covered by any other instruction. As noted, the matter of consent was covered by Instruction No. 6 by the words "against her will." In the Egner case, supra, it was held that these submitted words mean exactly the same thing as "without her consent," and are defined as the manifestation of the utmost reluctance and the greatest resistance on the woman's part. 296 S.W. 146 [2]. Instruction No. 13, offered by appellant but refused by the court, covered the same matter and the court was not bound repetitively to cover it. Appellant's argument is that the further phrase "great personal injury" in Instruction No. 6 is different than the approved phrase "great bodily harm." The evidence is sufficient to support the submission that appellant by threats of force and physical violence caused Sharon to submit to his desires through fear of great personal injury. There is no perceivable difference in the latter words and "great bodily harm." The giving of Instruction No. 6 (and the refusal of Instruction No. 13) was not error. Point V is overruled.

 It is impossible to understand appellant's Point VI. He says the court erred in failing to instruct on the burden of persuasion or proof as required by Supreme Court Rule 26.02(6), V.A.M.R., in that the court failed to instruct upon concealment and failure to make an outcry. The court *did* instruct upon those two matters of defense in Instructions Nos. 7 and

8, given at the request of appellant. If the court covered the subjects it matters not who offered the instructions thereon, and no prejudice was occasioned to appellant because he was required or forced to offer the matters. Point VI is overruled.

■ Appellant offered Instruction No. 12, which was refused by the court, upon common assault upon Sharon (without an intent to ravish and carnally know her). As above set forth evidence shows there was substantial evidence that forcible rape had been committed by appellant. It was held in State v. Grant, Mo., 394 S.W.2d 285, 289 [10], that where the evidence showed that sexual intercourse was had forcibly and without the consent of the female, and all elements of the offense including penetration were proved (as here), the defendant was either guilty of forcible rape or nothing. "Since there was substantial evidence that the offense of forcible rape had been committed, the court was not authorized to instruct on assault with intent to commit rape." See also State v. King, 342 Mo. 975, 119 S.W.2d 277, 284 [13], and State v. Adams, Mo., 380 S.W.2d 362, 370 [18]. The court did not err in refusing Instruction No. 12, and Point VII raising that issue is overruled.

Instruction No. 13, offered by appellant, was also refused by the court. Appellant says this was error because the element of consent was in no manner covered by the main Instruction No. 6. The matter is disposed of by the above discussion of appellant's Point V where it is held that the matter of consent was covered by Instruction No. 6 by the words "against her will." Point VIII attacking the propriety of the refusal to give Instruction No. 13 is overruled.

■ Appellant says that Instruction No. 14 was improperly refused by the court for the reason that it properly declared the law and submitted to the jury the element of passive submission on Sharon's part. That instruction first defined the term "ravished" as meaning the carnal knowledge of a woman by a man, forcibly and against her will. It then instructed that the jury should find appellant not guilty as charged if it believed there was any element of consent, or a passive submission on Sharon's part to sexual intercourse with appellant. He cites no case holding that this instruction should have been given, but argues: "The evidence offered by the State in regard to the resistance by the Prosecutrix was meager and in most instances inconsistent in that although the Prosecutrix stated she attempted to resist the defendant; after the act, they carried on a friendly conversation, and that prior thereto they conversed. The failure of the Prosecutrix to make immediate outcry or complaint and the willingness of Prosecutrix to voluntarily remain with defendant after the act is evidence of a passive consent or submission on her part to the act not brought about by any violence or threats to her, and would properly justify submission of instruction number 14 to the jury." Instructions Nos. 7 and 8, given at appellant's request, told the jury that concealment of the alleged rape and failure to make an outcry, if believed, were inconsistent with his guilt, and the latter rendered the charge of rape improbable. There is no evidence of any conduct on Sharon's part before and after the act tending to show that she was willing to have sexual intercourse, or that she passively submitted thereto. The fact that she conversed with appellant both before and after the act and that she remained with him thereafter, under the facts and circumstances, does not show passive submission. There was no error in refusing Instruction No. 14. Point IX is overruled.

■ Appellant says that his motion to dismiss the case at the close of the state's opening statement should have been sustained because the facts outlined therein would not have been sufficient to sustain the charge in the information even if true. The facts outlined in the opening state-

ment, which the state stated it would prove, are very similar to those testified to by Sharon, above held to make a submissible case. There was no fact admitted which would show as a matter of law that the offense was not committed. In 23A C.J.S. Criminal Law § 1145(3), p. 379, it is stated, "The trial court in a criminal prosecution has the power to direct a verdict on the opening statement of prosecuting counsel; but this power should be exercised only when it clearly and affirmatively appears from the statement that the charge against accused cannot be sustained under any view of the evidence consistent with it, and only when the opportunity to correct or embellish the statement has been given to the prosecutor subsequent to accused's motion to direct a verdict." See the comparable rule in civil cases, Hays v. Missouri Pacific Railroad Company, Mo., 304 S.W.2d 800; State ex rel. State Highway Commission of Missouri v. Fenix, Mo. App., 311 S.W.2d 61; and Bayer v. American Mutual Casualty Company, Mo., 359 S.W.2d 748. Point X is overruled.

■ Appellant objected to the following closing argument of the state upon the ground that the same was an expression of belief as to the guilt of appellant and therefore not proper:

"MR. HARRIS: Mr. Ball, in his opening statement, stated that he viewed the case as premarital relations, nothing else. I would not be here today if I believed that statement."

The state says this is merely an answer to the personal opinion of appellant's attorney that his view of the case was as premarital relations. No opening statement of appellant is contained in the transcript. His counsel did argue to the jury that, "The only thing unusual, the only way this case varies from a *normal experience of this nature* is that she is hollering." (Italics added.) At any rate, the argument falls short of stating a personal belief of guilt based on facts a prosecutor knows *which*

*are not in evidence.* See State v. Feltrop, Mo., 343 S.W.2d 36, 39 [10, 11], holding that such arguments based on the evidence are proper; and State v. Woods, Mo., 406 S.W.2d 593, 595 [3, 4]. Point XI is overruled.

■ Appellant contends that the trial court erred in restricting his counsel's final argument in regard to the element of utmost resistance. He argued, "Utmost resistance? That means a kick—MR. HARRIS: Your honor, I object to what that means, as being just a kick. THE COURT: Sustained. Well, it means anything that will repel it, that's what it means. Utmost resistance? Where is it? There is none there, none at all. There was a pushing though. Push, push, push. That did go on. It didn't seem to make any difference there." It is apparent that after the state's objection was sustained appellant got his point across as to what would repel the assault. The trial court did not err to appellant's prejudice by sustaining the objection as to a kick meaning utmost resistance. Point XII is overruled.

■ Appellant says the court erred in overruling his objection to the state's final argument which alluded to Dr. Benson's testimony that Sharon was not calm when he saw her on Friday. He objected on the ground that he made no reference to what Dr. Benson said in his argument, and here urges that it was not proper rebuttal. Appellant's counsel argued to the effect that a woman who has been raped would not wait as long as the next day or afternoon of that day to say something about it. "They talk about experience. If that is her first experience, man, she is going to holler, real quick. I think you can infer this from the evidence here." Sharon's physical state the next day when she saw Dr. Benson is relevant to the issue of fresh complaint, and the objected to reference to his testimony is proper rebuttal to appellant's argument as to such complaint. Point XIII is overruled.

Alleging plain error affecting substantial rights, appellant says that the state's argument (unobjected to) referring to appellant having on swimming trunks under his slacks, which was not in evidence, was prejudicial and entitles him to a new trial. There is no apparent or manifest injustice in the argument, although not supported by the evidence. He further says that there was plain error in the argument that Sharon told her mother of the incident when she went home the night thereof. As above noted, there was a conflict in Sharon's testimony as to when she told her mother; on redirect examination she did testify that she told her of the incident that night. The argument was supported by the evidence and was not improper. Point XIV raises no plain error under Supreme Court Rule 27.20(c), V.A. M.R., and is overruled.

By his last point, appellant says that his trial counsel, Mr. Ball, was at that time a Special Assistant Attorney General involved in the case of State v. Forsythe, Mo., 406 S.W.2d 633, and therefore he was deprived of his constitutional right of assistance of counsel under State v. Crockett, Mo., 419 S.W.2d 22. No facts appear in this record concerning the manner of employment of appellant's trial counsel by the state, if that be the case, or any other fact about the matter. On this direct appeal, the matter may not be considered. Point XV is overruled.

Complied with are the matters of review specified by Supreme Court Rule 28.02, V. A.M.R.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.